IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

LIBERTAS CLASSICAL ASSOCIATION,

      Plaintiff,

vs.                                                             Case No.

GRETCHEN WHITMER, individually and
in her official capacity as Governor of the
State of Michigan, DANA NESSEL,
individually and in her official capacity as
Attorney General of the State of Michigan,
ROBERT GORDON, individually and in his
official capacity as Director of the Michigan
Department of Health and Human Services,
and MARCIA MANSARAY, individually
and in her official capacity as Deputy Health
Administrator of the Ottawa County
Department of Health,

      Defendants.

---

Ian A. Northon (P65082)
Adam J. Baginski (P83891)
RHOADES MCKEE PC
55 Campau Ave., N.W., Ste. 300
Grand Rapids, MI 49503
616.235.3500
ian@rhoadesmckee.com
abaginski@rhoadesmckee.com
smd@rhoadesmckee.com
ATTORNEYS FOR PLAINTIFF

---

**THERE ARE NO KNOWN RELATED**

**OR PENDING CASES BETWEEN THE PARTIES.**

## VERIFIED COMPLAINT

Plaintiff Libertas Classical Association d/b/a Libertas Christian School ("Libertas") sues Gretchen Whitmer ("Whitmer"), individually and in her official capacity as Governor of the State of Michigan, Dana Nessel ("Nessel"), individually and in her official capacity as Attorney General of the State of Michigan, Robert Gordon ("Gordon"), individually and in his official capacity as Director of the Michigan Department of Health and Human Services ("MDHHS"), and Marcia Mansaray ("Mansaray"), individually and in her official capacity as Deputy Health Administrator of the Ottawa County Department of Public Health ("OCDPH")(collectively, "Defendants"), and states as follows:

## NATURE OF CASE

1.     Libertas seeks redress against Defendants who, individually and in their capacity as government officials of the State of Michigan, have violated the constitutional rights of Libertas, its students, their families, and their teachers through a pattern of threats and intimidation. Defendants have sought to restrict the Constitutional rights of Libertas, and thereby its teachers, its students, and their families, to associate, to educate its students in the manner chosen by the students' families, and to express and practice religious beliefs. Libertas also seeks injunctive relief prohibiting the enforcement of certain state orders.

## PARTIES

2.     Plaintiff Libertas is a Michigan nonprofit corporation headquartered and operating in Ottawa county, Michigan. Libertas asserts its own rights, and the rights of its teachers, its students, and their families, who have placed Libertas *in loco parentis.*

3.     Libertas also has third-party standing to assert the rights of its students and their families, as well as its teachers, because rogue government actors have injured and continue to injury and threaten its students and their families and its teachers.

2

4.     The specific injuries to Libertas are fairly traceable to the actions of Defendants against Libertas, its teachers, its students, and their families, and the injuries to Libertas, its teachers, its students, and their families will be redressed by favorable decisions in this case. Libertas also has associational standing to assert these rights because: (i) the students and their families, as well as Libertas' teachers, would have standing to sue in their own right; (ii) Libertas is seeking to protect interests that are germane to its purposes; and (iii) neither the claim asserted nor the relief requested requires the participation of individual students, their families, or their teachers in this lawsuit.

5.     Defendant Whitmer is the Governor of Michigan. Libertas sues her individually and in her official capacity as Governor. At all times relevant to this Verified Complaint, she acted under color of law.

6.     Defendant Nessel is the Attorney General of Michigan. Libertas sues her individually and in her official capacity as Attorney General. At all times relevant to this Verified Complaint, she acted under color of law.

7.     Defendant Gordon is the Director of the Michigan Department of Health and Human Services. Libertas sues him individually and in his official capacity as Director of the Michigan Department of Health and Human Services. At all times relevant to this Verified Complaint, he acted under color of law.

8.     Defendant Mansaray is the Deputy Health Administrator of OCDPH. Libertas sues her individually and in her official capacity as Deputy Health Administrator of OCDPH. At all times relevant to this Verified Complaint, she acted under color of law.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction to resolve the federal questions presented under 28 U.S.C. §§ 1331 and 1343 and to redress constitutional violations under 42 U.S.C. § 1983. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

10.     This Court may award injunctive relief under 28 U.S.C. § 1343 and Rule 65 of the Federal Rules of Civil Procedure. This Court may award declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. This Court may award damages and attorneys' fees under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1983 and 1988.

11.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred within this district.

## GENERAL ALLEGATIONS

**I.  Libertas is an association of parents assembling to education their children in the Greco-Roman tradition and a shared Judeo-Christian cultural heritage— all anchored to a bible-based Christian world view.**

12.     Libertas is a private, non-denominational, bible-based Christian school serving more than 265 students from pre-kindergarten through twelfth grade. These students, their families, and their teachers reside in and constitute a close-knit community grown primarily from grassroots homeschool families.

13.     They start most days with chapel and every gathering, including every "class" with prayer and fellowship.

14.     It is inappropriate, unwise, and unconstitutional to try to fit the State's current designs of how an industrialized state-run school should operate to this bible-based association.

15.     Libertas is an openly faith-based institution that seeks to educate the whole person—integrated mind, body, heart, and spirit. Libertas desires its students to become well-educated, lifelong learners with a commitment to walk with Christ.

4

16.     Libertas offers both a full-time and part-time program to help parents who are the primary educators of their own children. If a family elects to participate in the part-time program, students attend in-person classes at Libertas three days a week and are home-schooled the remaining four days of the week. *See generally*, http://www.LibertasChristianSchool.org.

17.     Libertas also recognizes that the health, safety, and wellbeing of its teachers and students is paramount—second only their faithfulness to the Lord—and that Libertas should aim to protect its teachers and students against COVID-19.

18.      Libertas has therefore implemented several safety procedures to ensure that its teachers and students remain safe during the COVID-19 pandemic, including the following:

    a.   Increased cleaning of church and school facilities;

    b.   Hand washing recommendations and encouragement;

    c.   Availability of hand sanitizers or masks;

    d.   Protocols for keeping sick or exposed but asymptomatic children home;

    e.   Prayer, fasting, almsgiving, and traditional spiritual aids to combat disease.

19.     These safety procedures have proven effective and do not force students, parents, faculty, or staff to compromise sincerely held religious beliefs or misrepresent their well-documented theological tenants.

20.     While many schools in Ottawa County or throughout Michigan or the nation have suffered outbreaks, not one student at Libertas has fallen ill or tested positive for Coronavirus. Libertas has been operating according to its own anti-COVID protocols since September 8, 2020.

**II.  Whitmer issues executive orders.**

21.     In March 2020, Whitmer issued Executive Order 2020-04, which declared a state of emergency under both the Emergency Management Act, Mich. Comp. Laws § 30.403, and the Emergency Powers of the Governor Act, Mich. Comp. Laws § 10.31.

22.     Executive Order 2020-04 identified the COVID-19 pandemic as the basis for declaring the state of emergency under the Emergency Management Act and the Emergency Powers of the Governor Act.

23.     In April 2020, Whitmer issued Executive Order 2020-33, which replaced Executive Order 2020-04 and declared a state of disaster and a state of emergency under the Emergency Management Act and the Emergency Powers of the Governor Act.

24.     On this same date, Whitmer also requested that the Michigan Legislature extend the state of emergency by another 70 days. The Michigan Legislature denied this request and instead extended the state of emergency to April 30, 2020, but not beyond.

25.     Despite this clear Legislative mandate, Whitmer renewed the state of emergency several times violating her statutory and limited constitutional powers.

26.     Averaging more than 1 per day, Whitmer issued more than 180 executive orders in the meantime under what Whitmer claimed—and still claims—were her emergency powers under the Emergency Management Act and the Emergency Powers of the Governor Act. This legion of orders imposed wide ranging restrictions and mandates on all aspects of civil society, including, but not limited to, (i) requiring all individuals to wear masks in public, (ii) prohibiting gatherings in public beyond specified numbers of individuals, and (iii) altogether closing businesses and prohibiting certain social, economic, and religious activities.

27.     These executive orders impermissibly curtailed basic civil freedoms and liberties.

**III. The Michigan Supreme Court invalidates Whitmer's executive orders.**

28.     The Michigan Supreme Court, responding to a certified question from this Court in the case styled *Midwest Inst. of Health, PLLC et al. v. Whitmer et al.*, Case No. 1:20-cv-414, held that Whitmer exceeded her authority under the state statute and invalidated her executive orders issued under such invalid authority. *In re Certified Questions from the United States District Court*

*for the Western District of Michigan, Southern Division (Midwest Inst. of Health, PLLC v Governor)*, Docket No. 161492.

29.     On October 2, 2020, the court specifically ruled:

a.     Whitmer did not have authority after April 30, 2020 to issue or renew any executive orders relating to the COVID-19 pandemic under the Emergency Management Act.

b.     Whitmer did not possess authority to exercise emergency powers under the Emergency Powers of the Governor Act because such Act unlawfully and unconstitutionally delegates legislative power to the Executive Branch.

30.     Right after the Michigan Supreme Court issued its ruling, Whitmer held a press conference where she made several false or misleading comments about the nature of the Michigan Supreme Court's ruling. Most notably she ignored the unanimous 7-0 holding that Whitmer was without authority after April 30, 2020 to issue or renew any executive orders relating to the COVID-19 pandemic under the Emergency Management Act. Instead, she inaccurately claimed that only a slim, partisan majority of the Michigan Supreme Court invalidated her executive orders.

31.     Whitmer also asserted that the ruling could not go into effect until 28 days after the Michigan Supreme Court issued its opinion. This statement was also incorrect and unsupported.

32.     Ostensibly admitting her October 2 public statements were inaccurate, Whitmer filed moved to delay the precedential effect of the Michigan Supreme Court on October 5, 2020.

33.     The Michigan Supreme Court denied Whitmer's motion reaffirming that the Michigan Supreme Court's ruling is a valid and current interpretation of the Emergency Management Act and the Emergency Powers of the Governor Act, as well as Whitmer's limited executive authority under them.

34.     Whitmer lacked authority to issue or renew executive orders after April 30, 2020, and, as a result, such orders are invalid and unenforceable.

35.     In other words, Libertas's consistent communications to parents were fully vindicated by the Michigan Supreme Court. Yet, Defendants' retaliatory harassment and interference continues.

### IV. MDHHS efforts circumventing the Michigan Supreme Court's Ruling are likewise improper.

36.     Recognizing this inevitable outcome, the subordinate executive branch agency, MDHHS, issued is own Emergency Order Under MCL 333.2253—Gathering Prohibition and Mask Order ("October 5 Order"), attached her as **Exhibit 1**.

37.     Taking a page from the Governor's capricious playbook, just four days later MDHHS changed its mind and issued a subsequent Order ("October 9 Order"), which repealed and replaced the October 5 Order, attached here as **Exhibit 2**. As relevant, the October 9 Order:

   a.  Limited the occurrence of and number of attendees at both indoor and outdoor gatherings;

   b.  Restricted the capacity of certain businesses and entertainment venues;

   c.  Restricted gatherings of employees at their place of employment;

   d.  Provided that those responsible for businesses, schools, and similar operations must require all individuals in a gathering to wear a face covering, subject to certain, limited exceptions, which exceptions include those who are engaging in a religious service;

   e.  Provided that those responsible for businesses, schools, and other similar operations cannot assume those who do not wear a face covering falls within an exception to the face covering mandate;

    f.   Permits local health departments and law enforcement officers to carry out and enforce the terms the terms of the October 9 Order;

    g.   Provides that a violation of the October 9 Order is a misdemeanor and is punishable by imprisonment of not more than 6 months and a fine of not more than $200.00;

    h.   Provides that a violation of the October 9 Order is punishable by a civil fine of up to $1,000.00 for each violation or day that a violation continues; and

    i.   Exempts places of religious worship and individuals engaged in religious worship at a place of religious worship from such penalties.

38.    The October 9 Order is a cynical effort by Whitmer, the subordinate MDHHS, and the Michigan Executive Branch generally to flout the Michigan Supreme Court's ruling invalidating Whitmer's executive orders as an improper usurpation of legislative power.

39.    OCDPH threatened Libertas with an improper cease and desist order ("Cease and Desist Order"). OCDPH dated the Cease and Desist Order October 6, 2020, attached here as **Exhibit 3**, but did not serve Libertas until October 15, 2020 by Certified Mail.[1]

40.    Among other things, the County demands that Libertas:

    a.   Immediately cease all operations that do not comply with the October 5 Order;

    b.   Comply with the Michigan Public Health Code; and

    c.   Comply with the October 5 Order.

---

[1] Certified Mail, attached as here as **Exhibit 4**.

9

41.     The Cease and Desist Order also suggests that Libertas' violation of the Cease and Desist Order would be a misdemeanor exposing school officials to 6 months' imprisonment, prompt criminal penalties, civil fines, suspensions of licenses, or closure until Libertas proves full compliance.[2]

42.     In the Cease and Desist Order, OCDPH threatens to seek an order compelling compliance with the Cease and Desist Order if Libertas failed to meet these demands.

43.     As a result of the October 5 Order and the Cease and Desist Order seeking to enforce it, Libertas, its teachers, its students, and their families will suffer immeasurable and irreparable harm if the County or State enforces the October 5 Order against Libertas.

44.     The same irreparable harms would fall on Libertas if the State or its agencies enforce the October 9 Order or later orders cut from the same unconstitutional cloth.

45.     If Defendants force Libertas to comply with the October 5 Order, Libertas, its parents, students, and faculty will suffer violations of their Constitutional rights to remain the primary educators of their children over matters of faith and reason.

46.     Defendants also will and substantially interfere with Libertas's efforts help the association of families direct the upbringing and education of Libertas' students, to religious liberty and free speech, and to freely associate.

---

[2] It is also unclear how any government agent could enforce the County's October 6 Cease and Desist order based on the State's October 5 Executive Orders when in the intervening week, defendant Gordon ostensibly replaced and replaced the October 5 Order with his new October 9 Order. Notwithstanding, before filing this suit, Counsel for the County refused to concede the point, declared masks a "red-line," even on church-owned property and chapels, and insisted on full compliance with the entirety of the Orders. *See* pre-suit correspondence, attached here as **Exhibit 5**.

47.     Libertas will suffer these same injuries if Libertas does not comply with the October 9 Order—and therefore protects the Constitutional rights of its teachers, students, and families—because Defendants will force Libertas to close. Closing Libertas will not only jeopardize the financial integrity of Libertas, but it will also cause injury to Libertas' students, whose education will be hijacked by state actors operating under the color of law causing devastating disruption to their minds, bodies, and spirits during their most formative years.[3]

48.     All those attending Libertas will be scattered and forced to seek alternative means of spiritual formation and education, even though the school year has already started. Their parents, who have ascribed to the teaching methods employed by Libertas and who will compelled to seek alternative and less desirable means of educating their children, will also be injured.

## <u>COUNT I</u>

**Civil Rights Violations Under the U.S. Constitution—Freedom of Association**

49.     Libertas incorporates paragraphs 1 through 48 as if fully restated here.

50.     Defendants have violated and continue to violate the federal constitutional rights of Libertas, its teachers, its students, and their families to freely associate, as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

51.     On October 9, Defendants issued the October 9 Order. Through it, Defendants seek to impose on Libertas, its students, and their parents requirements that violate their right to freely associate. Compliance with the October 9 Order would prevent Libertas, its teachers, its students, and their parents from associating (i) for engaging in religious practice and worship, (ii) for

---

[3] If anyone causes one of these little ones—those who believe in me—to stumble, it would be better for them to have a large millstone hung around their neck and to be drowned in the depths of the sea. Matthew 18:6 (NIV); The Holy Bible, New International Version, Biblica (2011). Bible Gateway, www.biblegateway.com/versions/New-International-Version-NIV-Bible/.

engaging in and pursuing an education of their choosing, (iii) for engaging in social activities and (iv) for engaging in protected speech.

52.     In the Cease and Desist Order, Defendants threaten Libertas, its teachers, its students, and their parents with closure of their school if they do not bend the knee and comply with the October 9 Order. By making this threat, Defendants interfere even more with this fundamental right. Closing Libertas would ultimately deny Libertas, its teachers, its students, and their families the opportunity to associate for the purposes described above.

53.     By promulgating the October 9 Order, Defendants have directly caused a violation of Libertas', and its teachers', its students', and their parents', rights to freely associate.

54.     Defendants' customs have also had the primary purpose and effect of inhibiting the right of free association of Libertas, its teachers, its students, and their parents.

55.     The actions, policies, and customs of Defendants toward Libertas, its teachers, its students, and their parents establish Defendants' hostility towards their right to freely associate and, in the perception of an informed and objective observer, send a message of disapproval of their choice to associate for educational, religious, and social purposes.

56.     Defendants, in violating such rights, acted individually and in conspiracy with each other and with each other's officers, agents, and employees, all of whom were acting under the official policies or customs of Defendants and the entities for whom they were officers or agents.

57.     As a direct and proximate result of Defendants' acts, Libertas, its teachers, its students, and their parents have suffered and continue to suffer violations of their rights under the U.S. Constitution and have incurred attorney fees and travel costs.

WHEREFORE, Libertas requests that this Court order the following relief:

a.   Declaratory relief that Defendants have and will continue to violate Libertas' and its teachers', students', and their parents' Constitutional rights;

b.   Injunctive relief forbidding Defendants from continuing to violate Libertas' and its teachers', students', and their parents' Constitutional rights, as there is a substantial danger that, absent such relief, Defendants will continue to do what they have done, and because plaintiffs' remedy at law is inadequate;

c.   An injunction that that Defendants, their officers, servants, employees, and other agents, and those persons in active concert or participation with such individuals, must not (i) cause or attempt to cause the closure of Libertas, and (ii) must not undertake any other proceeding or action to impose on or enforce against Libertas the October 9 Order;

d.   Attorney fees and other expenses as provided by 42 U.S.C. § 1988;

e.   Costs as provided by law; and

f.   Any other just and proper relief.

## <u>COUNT II</u>

**Civil Rights Violations Under the U.S. Constitution—Family Integrity/Education**

58.   Libertas incorporates paragraphs 1 through 57 as if fully restated here.

59.   Defendants have violated and continue to violate the federal constitutional rights of Libertas and Libertas' students and their parents to be free from interference with the rights of parents, guardians, and families to direct the upbringing and education of their children under the U.S. Constitution.

60.   Defendants seek to force Libertas, its students, and their parents to comply with the requirements of the October 5 and October 9 Orders. Doing so interferes with the way Libertas, its students, and their parents have chosen to educate Libertas' students.

61.     Defendants threaten Libertas, its students, and their parents with closure of their school if they do not bend the knee and fully comply with the October 9 Order. By making this threat, Defendants also interfere with and chill this fundamental right. Closing Libertas would ultimately deny Libertas' students and their families their chosen manner of educating the students. It will also require Libertas' students, whose education will de devastatingly disrupted during their most formative years, and their parents, to seek alternative means of education. Such other education will be less desirable, as the students and parents have already ascribed to the teaching methods employed by Libertas. Additionally, finding alternative means of education, after the school year has already started, will be difficult, and assimilation into another school will cause undue stress to the students.

62.     By promulgating the October 9 Order, Defendants have directly caused a violation of Libertas', and its students' and their parents', rights to freely direct their own education.

63.     The policies and customs of Defendants have also had the primary purpose and effect of inhibiting the educational choices of Libertas, its students, and their parents.

64.     The actions, policies, and customs of Defendants toward Libertas, its students, and their parents reveal Defendants' hostility toward the sanctity of their right to direct the upbringing and education of their children and, in the perception of an informed and objective observer, send a message of disapproval of their educational choices.

65.     Defendants, in violating such rights, acted individually and in concert with each other and with each other's officers, agents and employees—all of whom were acting under the official policies or customs of Defendants and the entities for whom they were officers or agents.

66.     Defendants, directly or indirectly, and under color of law, approved and ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of their officers or agents. At all times, Defendants were acting under official policy or custom.

67.     As a direct and proximate result of Defendants' acts, Libertas, its students, and their parents have suffered and continue to suffer violations of their rights under the U.S. Constitution and have incurred attorney fees and travel costs.

WHEREFORE, Libertas requests that this Court order the following relief:

a.   Declaratory relief that Defendants have and will continue to violate Libertas' and its students' and their parents' Constitutional rights;

b.   Injunctive relief forbidding Defendants from continuing to violate Libertas' and its students' and their parents' Constitutional rights, as there is a substantial danger that, absent such relief, Defendants will continue to do what they have done, and because plaintiffs' remedy at law is inadequate;

c.   An injunction that that Defendants, their officers, servants, employees, and other agents, and those persons in active concert or participation with such individuals, must not (i) cause or attempt to cause the closure of Libertas, and (ii) must not undertake any other proceeding or action to impose on or enforce against Libertas the October 9 Order;

d.   Attorney fees and other expenses as provided by 42 U.S.C. § 1988;

e.   Costs as provided by law; and

f.   Any other just and proper relief.

## COUNT III

**Civil Rights Violations Under the U.S. Constitution—Religious Liberty**

68.     Libertas incorporates paragraphs 1 through 69 as if fully restated here.

69.     Defendants have violated and continue to violate the federal constitutional rights of Libertas, its teachers, its students, and their families to be free from interference with their right to religious liberty under the First and Fourteenth Amendments to the U.S. Constitution.

70.     As alleged above, Libertas is a faith-based, Christian association, an openly so.

71.     To accomplish its mission, Libertas partners with parents to employ a classical and biblical educational program, which is motivated to the fullest extent possible by the sincerely held Christian religious beliefs of Libertas, its parents, teachers, and students.

72.     Defendants have unconstitutionally discriminated against Libertas, its teachers, and its families because of Libertas's openly religious viewpoint by revealing both a lack of neutrality and stark hostility toward sincerely held religious beliefs and the integrated, theologically sound practices of Libertas, its teachers, its families.

73.     This animus is shown by the terse exchanges leading to the Cease and Desist Order.

74.     On September 4, 2020 defendant Mansaray called Libertas the first day it reopened for the 2020-2021 school year.

75.     This official claimed she received an anonymous complaint that Libertas was "still having chapel…" in violation of Whitmer's now-invalidated executive orders. Though polite, she then threatened Libertas suggesting that she would send officials from the Ottawa County Department of Public Health, local, and state law enforcement if they did not stop "having chapel" and engaging in religious worship in violation of the Governor's so-called emergency mandates.

16

76.     On September 25, 2020, defendant Mansaray referenced the earlier call and again threatened Libertas in her so-called "warning letter," attached as **Exhibit 6**. In the first paragraph, Mansaray criticizes Libertas's "**morning worship assembly**" and claims she received a second anonymous complaint (emphasis added).

77.     In short, Defendants purport to neutrally prohibit "indoor assemblies that bring together students from more than one classroom." *Id*. And, while platitudes about partnerships are offered, among other things, there is no carve-out for theological objections or religious exercise such as morning chapel despite the legislative mandate (and constitutional requirement) to do so.

78.     Now, despite the Michigan Supreme Court invalidating every basis for Defendants' earlier demands, Defendants issued an even broader Cease and Desist Order based on new more onerous requirements issued just one day earlier on October 5 under a different so-called emergency statute, now citing epidemics under MCL 333.2253.

79.     But since reopening in September, Libertas's safety measures have proven not only adequate, but exceptional. No students have fallen ill from COVID-19 and there have been no asymptomatic positive cases either.

80.     Instead of citing or threatening the myriad associations or schools who have had COVID-19 outbreaks or above average incidence, Defendants single out Libertas for allegedly violative chapel and morning assemblies. This is not "leveraging science and data" as Defendants euphemistically suggest in **Exhibit 6**, but devoid of any fact-based or evidenced-based rationale except Defendants stated animus toward religious assemblies.[4]

---

[4] Even the County's counsel demands that Libertas stop singing in chapel. **See Exhibit 5**.

81.     This is especially cynical when Defendants insist that Libertas bear all costs associated with compliance and that "The wearing of masks by teachers and students is a current requirement of all schools in the State of Michigan, public, private and parochial," *Id.,* but defendant Governor and Attorney General have sued the federal Secretary of Education and U.S. Department of Education to prevent them from sending direct Coronavirus aid or funding to private associations like Libertas to help them mitigate against the virus.[5]

82.     Through the Cease and Desist Order and new October mandates, Defendants seek to impose on Libertas, its teachers, its students, and their parents capricious mandates that violate their right to freely practice their religious beliefs. Compliance with the October 9 Order would prevent Libertas, its teachers, its students, and their parents from fully engaging in religious and biblical education, practice, and worship and force its immediate closure.

83.     OCDPH sent Libertas the Cease and Desist Order. Through the Cease and Desist Order, Defendants threaten Libertas, its teachers, its students, and their parents with closure of their school if they do not bend the knee and comply with the October 9 Order. By making this threat, Defendants further chill these fundamental rights. Closing Libertas would ultimately deny Libertas, its teachers, its students, and their families the opportunity to engage in religious and biblical education, practice, and worship in an integrated way.

84.     By promulgating the October 9 Order, Defendants have directly caused a violation of Libertas', and its teachers', its students', and their parents', rights to religious liberty and the free exercise thereof.

---

[5] *See State of Michigan, et al. v. Elisabeth DeVos and U.S. Dept. of Education*, 3:20-cv-04478 (Doc#1 Filed 07/07/20).

85.     The policies and customs of Defendants have also had the primary purpose and effect of inhibiting religious beliefs and activities, including, but not limited to, those of Libertas' teachers, students, and their families, and has unconstitutionally entangled Defendants in the religious beliefs and practices of Libertas' teachers, students, and their families.

86.     The actions, policies, and customs of Defendants toward Libertas, it teachers, its students, and their parents: (i) reveal Defendants' hostility towards the religious beliefs and practices of Libertas, it teachers, its students, and their parents; (ii) in the perception of an informed and objective observer, send a message of disapproval of their religious beliefs and practices; (ii) discriminate against religion, favor non-religion, and thereby injure Libertas, it teachers, its students, and their parents; and (iii) discriminate among religions by singling out the religious beliefs and practices espoused by Libertas, it teachers, its students, and their parents.

87.     Defendants, directly or indirectly, and under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of their officers, agents, or employees described above. At all times, Defendants were acting under official policy or custom.

88.     As a direct and proximate result of Defendants' acts, Libertas, its teachers, its students, and their parents have suffered and continue to suffer violations of their rights under the U.S. Constitution and have incurred attorney fees and costs.

WHEREFORE, Libertas requests that this Court order the following relief:

    a.   Declaratory relief that Defendants have and will continue to violate Libertas' and its teachers', students', and their parents' Constitutional rights;

    b.   Injunctive relief forbidding Defendants from continuing to violate Libertas' and its teachers', students', and their parents' Constitutional rights, as there is a substantial

danger that, absent such relief, Defendants will continue to do what they have done, and because plaintiffs' remedy at law is inadequate;

c.   An injunction that Defendants, their officers, servants, employees, and other agents, and those persons in active concert or participation with such individuals,  must not (i) cause or attempt to cause the closure of Libertas, and (ii) must not undertake any other proceeding or action to impose on or enforce against Libertas the October 9 Order;

d.   Attorney fees and other expenses as provided by 42 U.S.C. § 1988;

e.   Costs as provided by law; and

f.   Any other just and proper relief.

## COUNT IV

### Supplemental State Law Claim

### Violation of Michigan Constitution—Separation of Powers and Non-Delegation Clauses

89.     Libertas incorporates paragraphs 1 through 87 as if fully restated here.

90.      The October 9 Order is unconstitutional and unenforceable against Libertas because it hinges on impermissible delegations of legislative authority to the Executive Branch, a violation of the Michigan Constitution.

91.     The Separation of Powers Clause in the Michigan Constitution provides, "The powers of government are divided into three branches: legislative, executive, and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Mich. Const. (1963) art. III, Section 2.

92.     Article IV, Section 1 of the Michigan Constitution vests the legislative power of the State of Michigan in the Michigan Legislature. The Michigan Executive Branch cannot thus wield legislative power.

93.     A delegation of legislative power is unlawful if it permits executive law making. If a delegation of authority to the executive branch is not sufficiently specific or fails to establish boundaries within which the executive branch may exercise the authority delegated to it, or if the Executive Branch acts beyond such boundaries, the Executive Branch's actions are invalid and unconstitutional.

94.     Michigan statute provides that, if the director of MDHHS determines "that control of an epidemic is necessary to protect the public health, the director by emergency order may prohibit the gathering of people for any purpose and may establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws." Mich. Comp. Laws § 333.2253.

95.     The October 9 Order is invalid and unenforceable because the authority defendant Gordon cites, section 333.2253, is an impermissible delegation of legislative authority to the Executive Branch, MDHHS. Much as the Michigan Supreme Court found that the chief executive could use the Emergency Powers of the Governor Act to unlawfully delegate legislative power to the Executive Branch, Section 333.2253 does not provide sufficient standards to guide the subordinate executive agency MDHHS's actions, nor does it provide boundaries within which MDHHS may exercise the authority delegated to it. Rather, the delegation of authority is unbridled and invites MDHHS to engage in improper law making.

96.     The October 9 Order is also unlawful because, even if section 333.2253 did provide sufficient standards to guide MDHHS's actions and did provide boundaries within which MDHHS may exercise delegated authority, MDHHS has acted beyond these boundaries and beyond the power entrusted to it under MCL 333.2253 by acting arbitrarily, unreasonably, and in violation of the Separation of Powers Clause by issuing the October 9 Order and threating

Libertas with crimes without first promulgating rules or regulations to ensure constitutional rights are respected and protected.

97.    The Legislature did not give MDHHS *carte blanche* to trample Libertas's rights merely by claiming an epidemic.

98.    There has been no showing or proof of any outbreak or epidemic at Libertas. Nor has there been a showing of exigency its immediate surrounding. Quite literally, it is in a bubble under the careful protection and care of the parents, Libertas, and the Lord.

99.    MDHHS, through the October 9 Order, seeks to penetrate that bubble and intrusively regulate how citizens of the state of Michigan gather and associate and conduct social and economic activities.

100.    As stated above, the October 9 Order imposes several restrictions and duties on individuals and businesses. These restrictions and duties are overbroad, reaching far beyond what is necessary to "protect the public health." The October 9 Order fails to prove (i) how the specific limitations imposed on gatherings and business capacity protect the public health, (ii) how the face covering mandate protects the public health, and (iii) why the exceptions for some, but not other, businesses, establishments, and individuals are permissible and protect the public health. Failing to do so, the October 9 Order is arbitrary and capriciously exceeds the authority granted to MDHHS by selectively enforcing the edict against those without an outbreak or even a single recorded case of the virus among its students.

101.    Moreover, under MCL 333.2253, MDHHS may only (i) prohibit the gathering of people for any purpose and (ii) establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws.

102.     This statute does not permit MDHHS to regulate the ways individuals gather or to implement a blanket requirement that all individuals wear face coverings in public. For this additional reason, the October 9 Order is arbitrary and exceeds the authority granted to MDHHS.

103.     Libertas has no adequate remedy at law for such continuing unlawful actions by Defendants, but remains confident it will ultimately prevail.[6]

104.     The undersigned counsel contacted counsel for the County after receiving the Cease and Desist Order but before suing. Both verbally and in writing, the County's attorney insisted on full compliance and no exception for Libertas or the parents' religious exercises.

105.     Worse, Defendants claims that "[the Cease and Desist Order] was in the works well before the Michigan Supreme Court decision under the EMA or the reissuance of the mask mandate by the Director of Community Health under the PHC." **Exhibit 5**, *supra*.

106.     This further reveals that the Defendants are acting rashly and zealously without regard to the Michigan Supreme Court recent decision and without patience for the Michigan Legislature to act carefully and with prudent regard for constitutionals protections.

WHEREFORE, Libertas requests that this Court order the following relief:

g.  Declaratory relief that The October 9 Order is unconstitutional and unenforceable against Libertas, its teachers, its students, and their parents because it stems from impermissible delegations of legislative authority to the Executive Branch, a violation of the Michigan Constitution;

h.  Injunctive relief preventing Defendants from enforcing the October 9 Order against Libertas, its teachers, its students, and their parents;

i.  Attorney fees and other expenses as provided by 42 U.S.C. § 1988;

---

[6] "In a just cause it is right to be confident." Sophocles.

j.   Costs as provided by law; and

k.   Any other just and proper relief.

<u>**COUNT V**</u>

**Violation of Michigan and U.S. Constitutions—Procedural Due Process**

107.   Libertas incorporates paragraphs 1 through 104 as if fully restated here.

108.   The October 9 Order violates procedural due process as applied to Libertas so long as it bars or interferes with Libertas' sincerely held efforts to continuing fully-integrated practices (mind, body, and soul), procedures, and operations as a private, Christian school.

109.   Even during this COVID-19 pandemic, the public is entitled to the protections of due process. *See, e.g., Friends of DeVito v. Wolf*, ___ A.3d ___, 2020 WL 1847100, at *19-21 (Pa. Apr. 13, 2020). ("The imperative necessity for safeguarding these rights to procedural due process under the gravest of emergencies has existed throughout our constitutional history, for it is then, under the pressing exigencies of crisis, that there is the greatest temptation to dispense with fundamental constitutional guarantees which, it is feared, will inhibit governmental action." (internal quotation omitted)).

110.   Due process requires that, before the state may deprived someone of a property interest, that person must be afforded notice, an opportunity to be heard at a meaningful time and in a meaningful manner, and a decision before a neutral decision-maker.

111.   The October 9 Order denies Libertas the ability to operate its school consistent with its classical, biblical curriculum in a manner that violates the Constitutional rights of Libertas, its teachers, its students, and their parents. Defendants, through the Cease and Desist Order, threaten to close Libertas if Libertas does not comply with the unconstitutional mandates of the October 9 Order. Elimination of Libertas' ability to operate its school deprives Libertas of a liberty and

24

property interest. Libertas is therefore entitled to a hearing to challenge the applicability of the October 9 Order to Libertas and Defendants enforcement of the October 9 Order's against Libertas.

112.    The October 9 Order and the Cease and Desist Order do not provide Libertas this opportunity.

113.    As a result, the October 9 Order violates procedural due process as applied to Libertas, and this Court must enjoin the enforcement of the October 9 Order against Libertas to prevent irreparable harm to Libertas, its teachers, its students, and their parents.

114.    Libertas has no adequate remedy at law.

WHEREFORE, Libertas requests that this Court order the following relief:

l.    Declaratory relief that the October 9 Order violates procedural due process as applied to Libertas;

m.    Injunctive relief preventing Defendants from enforcing the October 9 Order against Libertas, its teachers, its students, and their parents;

n.    Attorney fees and other expenses as provided by 42 U.S.C. § 1988;

o.    Costs as provided by law; and

p.    Any other just and proper relief.

Dated:  October 18, 2020                          Respectfully Submitted,

                                                  /s/ Ian A. Northon
                                                  Ian A. Northon

<u>VERIFICATION</u>

1.      I am an adult competent to testify to the matters stated herein;

2.      I am a devout Christian and experienced educator;

3.      I am the Headmaster of Libertas Classical Association d/b/a Libertas Christian School

and on its governing Board, and in that capacity, I am familiar with the allegations in this action;

4.      I have read the Verified Complaint above and, based upon my personal knowledge of the

facts stated therein, the facts stated in the Verified Complaint are true to the best of my

knowledge and belief;

5.      If called upon to testify, I would competently testify as to the matters stated herein; and

6.      Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

By: Bob Davis, Headmaster