IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

LIBERTAS CLASSICAL ASSOCIATION,
       Plaintiff,

v.                               Case No. 1:20-cv-997
                               Hon. Paul L. Maloney

GRETCHEN WHITMER, et al.
       Defendants.

| | |
|---|---|
| Ian A. Northon (P65082) | Douglas W. VanEssen |
| Adam J. Baginski (P83891) | Elliot J. Gruszka |
| RHOADES MCKEE PC | SILVER & VAN ESSEN, PC |
| 55 Campau Ave., N.W., Ste. 300 | 300 Ottawa Ave N.W., Suite 620 |
| Grand Rapids, MI 49503 | Grand Rapids, MI 49503 |
| 616.235.3500 | 616-988-5600 |
| ian@rhoadesmckee.com | dwv@silvervanessen.com |
| abaginski@rhoadesmckee.com | egruszka@silvervanessen.com |
| smd@rhoadesmckee.com | ATTORNEYS FOR DEFENDANTS MARCIA |
| ATTORNEYS FOR PLAINTIFF | MANSARAY AND OTTAWA COUNTY |
| | DEPARTMENT OF HEALTH |

**BRIEF IN OPPOSITION TO DEFENDANT MANSARAY'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Brief in Opposition to Defendant Mansaray's Motion for Preliminary Injunction ........................1

Table of Contents ...............................................................................................................2

Index of Authorities ...........................................................................................................3

Introduction ........................................................................................................................4

Statement of Facts ..............................................................................................................4

Argument ............................................................................................................................5

       I.      Standard of Review..............................................................................................5

       II.     MANSARAY IS NOT ENTITLED TO A PRELIMINARY INJUNCTION...............................................................................................5

               A.     MANSARAY HAS NOT ESTABLISHED SHE IS ENTITLED TO INJUNTIVE RELIEF...............................................6

               B.     MANSARAY'S LITTERS HER AFFIDAVIT WITH INACCURACIES. .................................................................17

               C.     MANSARAY HAS DISREGARDED THIS COURT'S RULES. ...............................................................................18

Conclusion ........................................................................................................................19

INDEX OF AUTHORITIES

**CASES**

*CH Royal Oak, LLC v. Whitmer*, No. 1:20-CV-570, 2020 WL 4033315 (W.D. Mich. July 16, 2020) ......................................................................................................... 13

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) ................................... 13

Fed. R. Civ. P. 65(b) ..................................................................................................... 5

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) ................ 13

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 1:20-CV-458, 2020 WL 3421229, (W.D. Mich. June 19, 2020) ..................................................................... 5

*Legatus v. Sebelius*, 988 F. Supp. 2d 794, 814 (E.D. Mich. 2013) ............................... 13

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958) .................................................................................................... 9

**STATUTES**

Mich. Comp. Laws § 333.2253 ...................................................................................... 7

**RULES**

Fed. R. Civ. P. 12 ............................................................................................. 4, 5, 10

Fed. R. Evid. 802 ......................................................................................................... 11

Mich. Admin. Code r. 325.173 ................................................................................... 7, 8

Mich. Admin. Code r. 325.174 ................................................................................... 7, 9

W.D. Mich. LCivR 7.1 ................................................................................................. 5

## INTRODUCTION

The evidence will show that Mansaray and the OCDPH shirk their own responsibilities to Libertas and the public while making inaccurate and misleading contentions to this Court. OCDPH hastily invites this Court to bless the County's Retaliatory orders with an injunction—citing overgeneralized concerns about public health, inadmissible evidence about Libertas, or impertinent outside considerations that this Court should ignore or strike under Rule 12(f). Even though Libertas repeatedly advised OCDPH of the true facts, through counsel, Mansaray ignores the evidence in favor of a complete and indefinite shutdown of the association's chosen religious and educational activities. This is an abuse of power, and this Court should decline OCDPH's unreliable and hasty invitation. Because, Mansaray has not established that she is entitled to the injunctive relief demanded, and this Court should deny her cross motion accordingly.

## STATEMENT OF FACTS

The Court is well-advised on the procedural posture of this case; however, the parties hotly dispute the facts. Still, this Court should hold the parties to standards of evidence and fair play. One of Libertas's chief complaints is that OCDPH keeps moving the goals posts and ignoring its own obligations to Libertas. To recap, therefore, this Court entered its Order for Briefs and Notice of Hearing for Preliminary Injunction on October 22, 2020, when the Court ordered:

1. Both parties must file a motion and supporting brief for a preliminary injunction by 12:00 p.m. on Monday, October 26, 2020.

2. Both parties must file a responsive brief by 12:00 p.m. on Tuesday, October 27, 2020.

3. The Court will hold a hearing on the cross motions on Wednesday, October 28, 2020, at 1:30 p.m. (PageID.257).

On October 23, Mansaray moved for Preliminary Injunction. (*See* ECF No. 15). Mansaray requests that this Court "preliminarily enjoin Libertas from operating in-person classes unless it

follows masking, gathering, and reporting requirements of Michigan Public Health Laws." (PageID.281). This request is highly irregular because OCDPH engaged in self-help and closed Libertas the day before (*see* PageID.263); the County shut down the association's chosen religious and educational activities indefinitely and gave them no opportunity for redress under state law to the County or State except though this federal Court and Libertas's cross motion on constitutional grounds (PageID.262-265). Mansaray also filed no brief in support of her Motion, violating W.D. Mich. LCivR 7.1(a).

On October 26, Libertas filed its cross Motion for Preliminary Injunction. (*See* ECF No. 17). Libertas requests that this Court stop Defendants from enforcing the litany of Retaliatory orders against Libertas and keep OCDPH from "making an example" out of Libertas because it dared to assert constitutional objections and protect the privacy of its members in the face of reprisals.

**ARGUMENT**

## I.  STANDARD OF REVIEW.

The Court is well-advised of the standard by which it may issue preliminary injunctions under Fed. R. Civ. P. 65(b). And the Court knows it "has discretion to grant or deny preliminary injunctions," but should grant injunctive relief only if the movant establishes it is entitled to it. *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 1:20-CV-458, 2020 WL 3421229, at *2 (W.D. Mich. June 19, 2020).

## II.  MANSARAY IS NOT ENTITLED TO A PRELIMINARY INJUNCTION.

The factual assertions Mansaray makes in support of her Motion are either inaccurate, contradicted by more reliable evidence cited and presented by Libertas, based on inadmissible evidence, or impertinent materials that this Court should strike or disregard under Rule 12(f). In addition, Mansaray, in apparent disregard for this Court's rules, has not supported her Motion for

5

Preliminary Injunction with a brief or memorandum of law in support. As a result, Mansaray has not established she is entitled to the injunctive relief she requests, and this Court should deny her Motion accordingly.

### A. MANSARAY HAS NOT ESTABLISHED SHE IS ENTITLED TO INJUNTIVE RELIEF.

The assertions Mansaray makes in support of her Motion are deficient for the reasons identified below. As a result, Mansaray has not established she is entitled to the injunctive relief she requests, and this Court should deny her Motion accordingly.

#### 1. The pandemic is not spiking.

Mansaray first asserts that the COVID-19 pandemic is "currently spiking in Ottawa County." (PageID.278). Yet Mansaray offers no evidence for this self-serving statement. Nor could she, given that there is no indication that the rates of infection are "spiking" as Mansaray erroneously claims.[1] This statement is an over-exaggeration, as OCDPH's and MDHHS's own data shows. And while Mark Twain was no epidemiologist, he was correct in criticizing the improper use of data to bolster weak arguments when he quipped: "There are three kinds of lies: lies, damned lies, and statistics."

COVID-19 cases, hospitalizations, ICU, and deaths are all down when compared to their peak levels in the Spring.[2] And there have been zero deaths of school-aged children in Ottawa

---

[1] https://www.miottawa.org/Health/OCHD/coronavirus.htm;

https://www.ottawapublichealth.ca/en/reports-research-and-statistics/daily-covid19-dashboard.aspx;

https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html

[2] https://www.miottawa.org/Health/OCHD/coronavirus.htm;

https://www.ottawapublichealth.ca/en/reports-research-and-statistics/daily-covid19-dashboard.aspx

County. While serious, these risks hardly justify a complete and total deprivation of Libertas's civil liberties. Moreover, as her overgeneralized statements underscore, Mansaray has not carried her burden of establishing that the government has a compelling interest which excuses its repeated and continued violations of Libertas' Constitutional rights. (*See* PageID.326, *et seq*.). Thus, not only has Mansaray failed to establish her need for injunctive relief, but she has also failed to justify her earlier unconstitutional actions alleged in Libertas's cross-motion.

2.    **Defendants have interfered with Libertas' Constitutional rights.**

Mansaray surprisingly asserts that the state's orders "are not radically interfering with routine daily life," and that "[t]hey are not closure laws." (PageID.279). She also asserts they are "designed to keep activities such as school open with a minimal of intrusion." *Id*. But, if such orders did not radically interfere with the lives of Libertas, its teachers, its students, and their families, Libertas would not have filed this lawsuit. As Libertas' Brief in Support of its Motion for Preliminary Injunction shows over and over (*see* ECF 18), these orders are continually violating Libertas' and its members' rights to family integrity, religious expression, and free association. OCDPH's closure of Libertas has caused a domino effect, disrupting and damaging the religious, educational, and work lives of Libertas' parents and children. These facts, coupled with the closure of Libertas, reveal far more than minimal intrusion. Thus, the injunctive relief Mansaray requests will significantly harm Libertas, and its teachers, students, and their parents.

3.    **Libertas has acted in good faith under Michigan law.**

Mansaray asserts that Libertas:

1. "is not enforcing Director Gordon's mask and gathering mandates promulgated under MCL 333.2253";[3]

---

[3] As this Court knows, under this statutes, Gordon has issued three relevant orders: (i) Emergency Order Under MCL 333.2253 – Gathering Prohibition and Mask Order ("October 5

2. "did not report the two teachers that recently tested positive for COVID-19 to OCPHD in violation of the provisions of R 325.173(7) or (8) or R. 325.173(9)(a)-(b)"; and

3. "has failed to identify students in the appropriate classes or grades so that OCPDH can perform necessary contact tracing to determine the scope of the outbreak in violation of R. 325.174(2)(a)-(f)."

This first assertion, that Libertas is not enforcing the state's Orders, is a half-truth that ignores the entire basis of this lawsuit. Libertas sued because full compliance with and enforcement of these orders would cause irreparable injury to it and its members by both violating their Constitutional rights and causing Libertas to permanently close its doors. Thus, by highlighting Libertas' noncompliance, Mansaray simply acknowledges the basis of Libertas' claims against her. But Mansaray and OCDPH have themselves not complied with the October 6 Order. They are shirking their own responsibilities and coming to the Court with unclean hands. Despite knowing that Staff Case 1 and Staff Case 2 tested positive for COVID-19 since at least October 14, OCDPH failed to notify Libertas of such cases until, at the earliest, October 18. *See* Mansaray email to Headmaster attached as **Exhibit 1**. Alleged fault for any failure to notify parents sooner can be placed squarely on the County, not Libertas. Even so, Libertas did contact parents about suspected cases before it needed to under any state or county mandate.[4] Libertas acted proactively simply because it was the right thing to do.

_____

Order"); (ii) Emergency Order Under MCL 333.2253 – Gathering Prohibition and Face Covering Order ("October 9 Order"); and (iii) Emergency Order Under MCL 333.2253 – Reporting of Confirmed and Probable Cases of COVID-19 at Schools ("October 6 Order").

[4] Notably, Libertas sent the letters based on self-reporting of suspected symptoms. The medical records obtained later from Metro Health vindicated Libertas's cautious approach and showed that based on CDC guidance going back 2 days (48 hours), Case 1 had no COVID symptoms until the evening of October 10 and no close contact with Libertas occurred under the CDC definitions.

In other words, no additional notice is necessary under the October 6 EO, as OCDPH alleges. Libertas also provided Staff Case 1's <u>medical records</u> and samples of these letters to OCDPH <u>before the retaliatory Closure Order</u>, but, despite this information, OCDPH still charged ahead with its rash and unconstitutional actions. *See* correspondence to OCDPH counsel, attached as **<u>Composite Exhibit 2</u>**. There is no evidence that the Cases were "actively shedding the virus in the classroom" as Mansaray repeatedly exaggerates. (PageID.280).

While OCDPH claims Libertas did not report Staff Case 1 or Staff Case 2 to the County under October 6 EO, it conveniently ignores the requirements of the October 6 EO <u>that requires the County to notify Libertas</u>, not the other way around. As mentioned above, Mansaray did not notify Libertas that Staff Case 1 tested positive until October 18, 2020, after Libertas had filed this lawsuit and moved for injunctive relief. These undisputed facts underscore Mansaray's strategy of obfuscation over its own responsibilities as cover for making an example out of Libertas. Even then, using the state's own guidance, there is no evidence of any "close contacts" or "school associated cases."

Further, rules 325.173(7) and (8) have no applicability to Libertas. Rule 325.173(7) requires "[a] health facility infection control committee" to "develop policies and procedures to ensure the appropriate reporting of designated conditions by physicians who treat individuals…." Libertas is not a health facility infection control committee, and it is not a physician, so this rule has no applicability to it. Rule 325.173(8) requires certain health care professionals to "report to the appropriate local health department any designated condition or any other disease, infection, or condition which comes to their professional attention and which poses a threat to the health of the public." Libertas is not, nor does it employ, a health care professional, so it has not reporting requirements under this rule. Lastly, Rule 325.173(9)(a)-(b) provides:

(9) A primary or secondary school, child day care center, or camp shall report, within 24 hours of suspecting, <u>both</u> of the following to the appropriate local health department:

(a) The occurrence <u>among those in attendance</u> of any of the serious communicable diseases listed and maintained by the department as required in MCL 333.5111(1); and

(b) The unusual occurrence, outbreak, or epidemic of any disease, infection, or condition <u>among those in attendance</u>. (emphasis added).

Libertas did not violate this regulation for two reasons. First, there is no evidence that Staff Case 1 had any virus or COVID symptoms while in attendance at Libertas. Second, there was nothing unusual happening among those in attendance. As stated, Libertas has had no symptomatic cases at the school and based on a careful review of the medical evidence, there would be no independent reporting obligations triggered here. OCDPH claims it is following the science, but it refuses to acknowledge the admissible medical records of the treating physicians in favor of anonymous reports and other conjecture. OCDPH has not met its burden of proving Libertas violated any such regulation. At most, even accepting OCDPH's defamatory statement that an outbreak has occurred at Libertas, Libertas' reporting obligation would be triggered 24 hours after such a declaration by the County. But Libertas posted updates on its website (thus satisfying any public notice requirement) before suing—and a full week before OCDPH erroneously first claimed an official "outbreak" had occurred. Libertas provided OCDPH with the link to the website notices before the Closure. (*See* Composite Exhibit 2). That OCDPH continues to ignore the public postings and misrepresents to this Court that Libertas failed to respond reveals the County's continued bad faith.

### 4.   This Court should not compel Libertas to turn over its member lists in response to the County's reprisals

Libertas need not identify its students or their parents under Rule 325.174(2)(a)-(f)[5] because the Constitution and Supreme Court jurisprudence shield Libertas from such disclosure. Under *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958), the Supreme Court held that an association need not divulge the names of its members where doing so would deprive its members of their First Amendment rights and subject them to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." OCDPH not only foretold of reprisals with the Cease and Desist Letter, but it actually followed through with its Retaliatory Closure Order, fulfilling its prophecy. As more fully argued in Libertas Brief in Support of its Motion for Preliminary Injunction (*see* PageID.341-342), the County's own actions have thus highlighted this threat. And, the threat is ongoing. Libertas does not have to share its membership list of parents to OCDPH, therefore, under this or any of the rules cited by Mansaray—especially, as here, when the spurious demands only came after Libertas sued.

For these reasons, Mansaray has not established she is likely to succeed on her claims against Libertas.

---

[5] Under Rule 325.174(2), an investigator "who presents official identification of the local health department" must be provided with certain information related to:

    (a) Individuals who have designated conditions or other conditions of public health significance.

    (b) Individuals, whether ill or well, who are part of a group in which an unusual occurrence, outbreak, or epidemic has occurred.

    (c) Individuals who are not known to have a designated condition but whose medical or epidemiological information is needed for investigation into the cause of the occurrence of the condition.

    (d) Individuals who were potentially exposed to a designated condition.

    (e) Individuals who may be a carrier or health threat to others under MCL 333.5201.

    (f) Any other information that may be relevant to an investigation under this rule.

**5.      Carving out a religious exception for Libertas will not prevent the County from combatting COVID-19.**

Mansaray next asserts that the County's efforts to combat the virus will be "permanently defeated" if this Court denies the County injunctive relief. (PageID.279). Put in the most charitable light, Mansaray and her coworkers at OCDPH suggest they are overworked and overwhelmed. (PageID.188, 390). They purport to be working seven days a week. But that does not create an exigency to avoid the Constitution. In looking at OCDPH's conduct, Mansaray's officious acts reveal that OCDPH is trying to make an example out of Libertas so that other schools will toe the line. (PageID.176)("OCDPH cannot afford to ignore one school's flaunting of State Health Orders and expect that good faith and voluntary cooperation to continue at other schools.").

Mansaray provides no evidence that recognizing the religious exemption in the October 9 EO or that the measures implemented by Libertas to combat the virus are inadequate. Instead, Mansaray:

1.   Merely highlights that two teachers have become infected and postulates, without any proof, that such infections occurred "perhaps due to the failure to wear masks or social distance at Libertas."

2.   Points out the "White House Rose Garden super-spreader outbreak," although this statement is completely irrelevant and impertinent and, in fact, injects an unnecessary political bias into this case.

3.   States that "Libertas is effectively defeating contact tracing to determine if students have been affected." (PageID.279).

These conclusory, irrelevant, and impertinent statements should be stricken under Fed. R. Civ. P. 12(f), and in any case cannot establish the County's need for injunctive relief. Libertas prays that this Court move past the overstatements and generalities offered by OCDPH and instead focus on the actual Constitutional claims and medical evidence. The County has thus failed to prove a need for its requested injunctive relief.

In addition, and although the burden is not on Libertas to make this demonstration, Libertas has alleged that the measures it has taken to combat COVID-19 are effective and have prevented an outbreak of COVID-19 at Libertas as defined by the CDC and state. These measures are outlined in Libertas's Brief in Support of its Motion for Preliminary Injunction. (*See* PageID.309). OCDPH has conducted no formal investigation, issued no warrants or subpoenas, and performed no testing to prove otherwise.

Lastly, and most critically, the County bears the burden of proving that its anti-COVID strategy, which infringes on the Constitutional rights of Libertas, its teachers, its students, and their parents, are narrowly tailored to achieve a compelling government interest. (PageID.326 *et seq*.). But the County has not made this showing; it has not established a compelling government interest, nor has it shown that its disproportionate measures to close Libertas is narrowly tailored to achieve that purpose. *Id*. Thus, not only has Mansaray failed to show she is entitled to injunctive relief, but she has also failed to establish facts that could refute Libertas's cross Motion for Preliminary Injunction.

### 6.    Mansaray's Motion repeats misstatements in bad faith.

Mansaray states that Staff Case 1 "taught while [Staff Case 1] was actively shedding virus without a mask to protect her second-grade class." (PageID.280). This statement is misleading, and counsel for Mansaray has been made aware of this inaccuracy several times by email. (*See* PageID.126-128, 131-133, 143, 145). As Staff Case 1's medical records prove, Staff Case 1 did not begin exhibiting COVID-19 symptoms until the evening of October 10. As Mansaray suggests, an individual is "contagious, shedding virus at least two days before they become symptomatic."[6] (PageID.280). Thus, Staff Case 1 was contagious only beginning on the evening of October 8. The

---

[6] A close contact is any individual "who was within 6 feet of an infected person for at least 15 minutes starting *from 2 days before illness onset*." (PageID.285) (emphasis added).

last time during which Staff Case 1 was present at Libertas was the afternoon of October 8, more than two days before she began exhibiting symptoms. As a result, Staff Case 1 was not "actively shedding virus without a mask," and was not posing a risk of infecting Staff Case 1's students.

In support of this misstatement, Mansaray attached a spreadsheet of what appears to be other people's notes of conversations they allegedly had with Staff Case 1. *Id.* Yet these notes are double or sometimes triple hearsay and are thus inadmissible. *See* Fed. R. Evid. 802.

Even if these notes were admissible as evidence, they are contradicted by Staff Case 1's own contemporaneous medical records. Such medical records are inherently more reliable than the hearsay evidence presented by Mansaray. For these reasons, any assertion that Staff Case 1 endangered Staff Case 1's students or contributed to spreading COVID-19 at Libertas is misleading and inflammatory, and this court should disregard it as so.

Mansaray later states that "children can experience serious negative health consequences even if they are not symptomatic to traditional COVID-19 symptoms, and 20 percent of children have secondary conditions exposing them to serious acute COVID-19 disease"; this statement is highly speculative and immaterial to whether Mansaray has established she is entitled to injunctive relief against Libertas. (PageID.280). Mansaray has thus established no concrete harm—and even less so any irreparable harm—that the County will face absent injunctive relief. As a result, Mansaray cannot show she is entitled to injunctive relief.

## 7. Comparing Libertas to a college fraternity is insulting.

Mansaray states, "COVID-19 spikes in the greater community start with spreader events, typically where people are gathering without social distancing and without masks such as college fraternal activities, which is essentially what is happening at Libertas." (PageID.280). Libertas is a faith-based educational association that espouses biblical, classical, and religious teachings. Libertas is not an animal house fraternity. Nor has it had over 1,000 documented inflections like a

14

neighboring public university. Insinuating as much is not only insulting to the sincerely held religious beliefs, but is irrelevant and impertinent, and should be disregarded by this Court as such.

> **8.    Material harm will result to Libertas if the Court issues injunctive relief in favor of Mansaray.**

Astoundingly, Mansaray asserts that "[n]o material harm will occur to Libertas" if the Court issues the injunctive relief she requests. (PageID.280). This statement ignores the several pleadings filed by Libertas and the countless emails sent to counsel for Mansaray. Mansaray has scattered 267 healthy children and given their parents no access to their chosen means of religious and educational activities. Like lepers, the County has publicly proclaimed Libertas and its members to be infected and subject to an outbreak so even if they wanted to go to other churches and schools, they probably would not be welcomed. Although Mansaray states that "[m]asking does not materially impede the ability to learn, nor does gathering in smaller groups," such rules do impede the ability of Libertas to implement its biblical, classical, and religious curriculum, which they formed in the sincerely held religious of its teachers, students, and parents. (PageID.308-310). Such rules also offend these sincerely held beliefs; the Bible instructs that wearing a mask shows disdain for others and is disrespectful to the Lord. (PageID.323). Thus, compliance with the state and County's many orders will hurt Libertas, and such harm will be irreparable. (See *CH Royal Oak, LLC v. Whitmer*, No. 1:20-CV-570, 2020 WL 4033315, at *7 (W.D. Mich. July 16, 2020) ("The loss of First Amendment rights, even for a short period of time, constitutes irreparable harm.")(citing *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).

It is immaterial and irrelevant that "most liberal arts colleges" believe small class sizes are "conducive to learning." (PageID.280). Not only is Libertas different from "most liberal arts

colleges,"[7] but Defendants must show that the measures OCDPH has implemented to combat COVID-19 are narrowly tailored to achieve the state's compelling interests.[8] Even the Ottawa County ISD contradicts the County on this point citing the CDC:

### **Best Practices**

### **What can be done to minimize the spread of COVID-19?**

The CDC has provided some guidance on prevention that should be used for both the flu and coronavirus:

Washing/cleaning/sanitizing with soap and WARM water is fine, as long as you're washing hands for 20 seconds. No specific "special products" are needed.

Sanitizing gel is also fine, but note that it must be rubbed into the skin until it's dry.

**Masks do not provide any benefit to healthy individuals**, and if someone is exhibiting symptoms of coronavirus, they need to be isolated at home.

Coughing or sneezing into a tissue, elbow or sleeve is recommended. Tissues should be immediately thrown away in trash receptacles. (emphasis added)[9].

---

[7] It is not a traditional "school." It is more so a religious association that that "partners with parents to educate and disciple children consistent with a biblical worldview, teaching them to be lifelong learners able to discern, articulate, and defend truth in a compelling, winsome Christ-like manner." (PageID.308).

[8] Libertas does not concede that Defendants can prove a compelling interest.

[9] https://www.oaisd.org/programs-services/administrative-support/communications-marketing/coronavirus-disease-2019-covid-19-information/ (last accessed 10/26/2020).

9.      **The public interest is not served by enforcing orders that violate Libertas' Constitutional rights.**

"[I]t is always in the public interest to prevent violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). *See also Legatus v. Sebelius*, 988 F. Supp. 2d 794 (E.D. Mich. 2013) ("The public as a whole has a significant interest in ensuring equal protection of the laws and protection of First Amendment liberties."). Contrary, therefore, to Mansaray's conclusory statement that "the public interest is served if Libertas is compelled to follow the same Public Health Laws that all other schools follow," the public interest would be harmed by doing so.

B.      **MANSARAY'S       LITTERS       HER       AFFIDAVIT       WITH INACCURACIES.**

In her Motion for Preliminary Injunction, Mansaray says it is supported by her earlier-filed affidavit (*see* ECF No. 10-1)(PageID.281). But this affidavit is littered with inaccuracies. Mansaray, therefore, cannot rely on her affidavit to support her Motion for Preliminary Injunction and this Court should hold her to federal evidentiary standards at the hearing.

First, Mansaray asserts that Libertas did not respond to her after she sent the Cease and Desist Order. (PageID.189). This statement misrepresents Libertas' correspondence with her counsel; Libertas repeatedly responded to Mansaray through counsel beginning on October 16, 2020—the day after the County served the Cease and Desist Order on Libertas. (See PageID.46).

Mansaray says different things at different time, none of them accurate:

"[OCDPH] has been advised by a medical provider that a second-grade teacher at Libertas tested positive… and was actively symptomatic beginning on October 9, 2020. In her survey on October 15, she reported her COVID-19 onset on October 6 and in a call with a nurse, she admitted that her fever actually began on the evening of October 8, 2020… Libertas has apparently taken no steps to protect her second graders even though CDC mandates quarantine and contact tracing… It also failed to advise OCDPH of the teacher's positive test. (PageID.189)

This statement is problematic for three reasons. First, as belabored above, this timeline is factually inaccurate; Staff Case 1 was not symptomatic with COVID symptoms until the evening of October 10, so she was not contagious before the evening of October 8. She did not, therefore, spread the disease to her students. Under no theory do OCDPH's so-called exigencies and epidemic emergencies orders apply to sinusitis.

Second, the statements that Mansaray suggests were made by Staff Case 1 were coerced from Staff Case 1, only after Libertas sued, under threat of law enforcement action. OCDPH sent a letter to Staff Case 1 on October 16 suggesting that, if Staff Case 1 violated her quarantine, Staff Case 1 would be taken in custody by law enforcement officials. (PageID.345). After Libertas sued, OCDPH then called Staff Case 1 for the first time on October 18 demanded she cooperate with its investigation. Thus, these statements, made under such threats, stem from coercion and cannot be relied on by this Court.

Third, Mansaray's statement contradicts Staff Case 1's medical records. As noted above, Mansaray knew of this contradiction but refused to rescind the Retaliatory Orders. Even now, Mansaray and her counsel have persisted in the incorrect contention that Staff Case 1 was symptomatic with COVID before the evening of October 10.

### C.   MANSARAY HAS DISREGARDED THIS COURT'S RULES.

"All motions, except those made orally during a hearing or trial, shall be accompanied by a supporting brief." W.D. Mich. LCivR 7.1. Despite this rule and this Court's clear order to file a supporting brief (*see* PageID.257), Mansaray has failed to do so. Mansaray also criticizes Libertas for sending unsigned notification letters to parents (by email), but submits an unsigned Reply Brief of her own violating W.D. Mich. LCivR 5.7(e)(1). (PageID.398). For these reasons alone, this Court could dismiss Mansaray's Motion for Preliminary Injunction.

## <u>C<small>ONCLUSION</small></u>

As the arguments above show, Mansaray seeks an injunction with unclean hands—having repeatedly made misleading or inaccurate statements of fact. She continued to assert scandalous, impertinent, and irrelevant allegations, and has relied on inadmissible evidence in support of her Motion for Preliminary Injunction. This strategy of obfuscation, combined with aggression, underscores this Motion's weakness, that Mansaray has failed to establish facts or arguments enough to demonstrate she is entitled to injunctive relief. OCDPH invites this Court to bootstrap sinusitis symptoms and the specter of an epidemic to justify OCDPH retaliatory actions against Libertas Classical Association and its member families. This Court should decline the invitation and deny Mansaray's Motion for Preliminary Injunction as a whole. Libertas's cross Motion for Preliminary Injunction should be granted, the constitutional rights of Libertas's members should be protected against further interference by the unelected officials at the county, and this Court should award any other relief to Libertas that is just and proper.

Dated:  October 27, 2020

Respectfully Submitted,

/s/ Ian A. Northon
Ian A. Northon