UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTAS CLASSICAL ASSOCIATION,          )
       Plaintiff,          )
           )  No. 1:20-cv-997
-v-            )
           )  Honorable Paul L. Maloney
GRETCHEN WHITMER, *et al.*,          )
       Defendant.          )
_____)

## OPINION AND ORDER DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND ORDER OF ABSTENTION

Plaintiff Libertas Classical Association operates a non-denominational Christian school in Hudsonville, Michigan.  Libertas, on behalf of its teachers, students, and their parents, filed this lawsuit alleging that the State of Michigan's COVID-19 mandates, specifically face coverings, social distancing requirements and size limits on indoor gatherings, violate various rights guaranteed by the First Amendment.  Four days after Libertas initiated the action, the Ottawa County Department of Public Health closed the school, and it remains closed.

Over three days, the Court held a hearing on cross motions for injunctive relief.  In closing arguments, the County indicated to the Court that it did not want the Court to grant injunctive relief.  The County would make concessions on Libertas' objections to face coverings during chapel.  So long as Libertas was willing to follow the other mandates, Libertas was free to open the school doors and resume activities on Friday, November 6.

The Court considers the County's request for a preliminary injunction withdrawn.  The Court will deny Libertas' request for injunctive relief.  The Court will also abstain from

resolving Libertas' constitutional claims as those claims arise from an unsettled state law or act.  There is sufficient time for the state law issues to be raised in State courts.  And, the manner in which the State courts might resolve the dispute would eliminate the need for the Court to reach any constitutional determination.

## I.

In the weeks and months following the declaration of the COVID-19 pandemic, Governor Gretchen Whitmer issued a series of Executive Orders designed to slow the spread of the virus.  Among those orders, in late June 2020, Governor Whitmer issued Executive Order 2020-142, which required school districts and non-public schools to develop and adopt a COVID-19 Preparedness and Response Plan.  When a region where the school is located enters Phase 4 of the Michigan Safe Start Plan, the school's Preparedness and Response Plan had to "require the wearing of face coverings, except during meals and unless face coverings cannot be medically tolerated[.]"  The requirement extended to (1) all students when in an indoor hallway and common areas, (2) all staff, and (3) all students grades 6 and up when in classrooms.  Students in grade 5 and under did not have to wear face coverings so long as the students remained with their classes throughout the school day and did not come into close contact with students in other classes.[1]

Libertas, through witnesses at the hearing, established that it did not require students, teachers or staff to wear face coverings when school restarted in the fall of 2020.  Libertas' return to school plan states "[I]f so desired, parents may choose to send their children to

---

[1]        Executive Order 2020-185 amended 142 by extending the face covering requirement to all students from kindergarten and up.  185 would have become effective on October 5.

school with masks. However, Libertas faculty, staff and administration are not required to enforce the wearing of masks." (ECF No. 2-3 PageID.91.)

The Ottawa County Department of Public Health contacted Libertas about the COVID-19 measures. During the first week of school in early September, Defendant Marcia Mansaray spoke with Robert Davis, the headmaster at Libertas. Mansaray informed Davis that an anonymous person alleged that students at Libertas were not wearing face coverings. After Ottawa County received a second anonymous tip, Mansaray sent an email to Davis sometime around September 22. (ECF No. 1-6 PageID.48-49.)[2] Mansaray informed Davis about the requirement for face coverings. Mansaray concluded the email with a request and a warning. She requested "cooperation and enforcement of these requirements." (PageID.48.) She warned that if additional complaints were made, there might be "enforcement from state or local officials." (PageID.49.) She further warned that that "one or more positive cases of COVID-19 in the school building will necessitate that the school follow these requirements." (*Id.*)

On October 2, 2020, the Michigan Supreme Court concluded that Whitmer's executive orders, at least those issued after April 30, 2020, lacked a legal basis. *In re Certified Questions from the United States District Court*, —N.W.2d—, 2020 WL 5877599 (Mich. Oct. 2, 2020). Important here, the court held that Michigan's Emergency Power of the Governor Act (EPGA) violated the separation-of-powers principle of the Michigan

---

[2] The exhibit attached to Plaintiff's complaint has a September 25 date. At the hearing, the witnesses testified that the September 25 date is the date that Marsaray's email was forwarded, not the date it was received.

Constitution.  *Id.* at \*12.  Specifically, the delegation of power in the EPGA (1) was too broad in scope, *id.* at \*15; (2) omitted any durational limits, *id.* at \*16; and (3) lacked sufficient standards, *id.* at \*16-\*18.  Justice Viviano wrote an opinion concurring in part and dissenting in part.  *Id.* at \*24-\*39.  Again, important here, Justice Viviano noted the provisions of Michigan's Public Health Code that address public health issues generally and more specifically communicable diseases and epidemics.  *Id.* at \*29-\*30.

Director Robert Gordon of the Michigan Department of Health and Human Services quickly issued Emergency Orders using provisions of Michigan's Public Health Code to enact restrictions designed to slow the spread of COVID-19.  On October 5, Gordon issued an emergency order that generally implemented restrictions similar to what Whitmer had previously required through her Executive Orders.  On October 6, Gordon issued an order requiring local health departments to notify schools of confirmed COVID-19 cases and also required schools to post the notice on their website.  On October 9, Gordon rescinded the October 5 Emergency Order and replaced it with a different order that generally regulated the size of gatherings and required the use of face coverings in different situations.  Gordon primarily relied on Michigan Compiled Laws § 333.2251 and § 333.2253 as authority for his Emergency Orders.   On October 29, Gordon issued another Emergency Order that replaced the October 9 order.

Relevant to this dispute, the mandates for all three emergency orders are functionally the same.  The sizes of indoor gatherings are limited, people must socially distance, and the people gathering must wear masks.  School classrooms are probably exempt from the social distance requirements and the occupancy limitations, but not from the requirement for face

coverings.  The orders do include exceptions for face covering.  The orders also contain an exception for worship.

Gordon also issued a school-related Emergency Order on October 6.  This order contains requirements.  Under section 2, local health departments have 24 hours to notify the school "upon learning that a probable or confirmed case of COVID-19 is a 'School Associated Case.'"  Under section 3, within 24 hours of receiving a notice from the local health department, a school must provide notice to the school community.

In early October, Ottawa County sent the First Cease and Desist Order to Libertas. Mansarary testified that she received three more complaints about the failure to use masks or social distancing at Libertas on September 28 and 29.  She began drafting the order. Before the order could be sent to Libertas, the Michigan Supreme Court issued its October 2 ruling.  After Director Gordon issued his October 5 Emergency Order, Ottawa County revised its earlier draft.  Mansaray testified that the revised draft was approved on October 9.  She emailed Libertas the first Cease and Desist Order on Monday, October 12.  She also sent a copy of the order to Libertas by certified mail on October 12, which was received on Thursday, October 15.  (ECF No. 1-4 PageID.44.)

The First Cease and Desist Order asserts that Libertas is operating in violation of the October 5 Emergency Order.[3]  (ECF No. 1-3 PageID.41.)  The First Cease and Desist Order issued "pursuant to the Michigan Health Public Code, MCL 333.2451 and 333.2453, as well as" the October 5 Emergency Order.  (*Id.*)  Ottawa County alleged Libertas was in violation

---

[3]     By the time the County sent Libertas the First Cease and Desist Order, the October 5 Emergency Order had been rescinded and replaced by the October 9 Emergency Order.

of limitations on the size of indoor gatherings, the requirement that the individuals wear face coverings, and the social distancing requirements.  Ottawa County ordered Libertas to "immediately cease all operations that are not in compliance with current Emergency Order Under MCL 333.2253." (*Id.* PageID.42.)  Willful violation of the Cease and Desist Order is a misdemeanor and might result in citations, fines, or closure.  (*Id.* PageID.43.)

On October 16, a nurse for the County called Libertas.  Mansaray testified that the County learned, either on October 15 or October 16, that a teacher at Libertas, Teacher 1, had tested positive for COVID-19.  The County contacted the school late that afternoon and spoke with the individual designated by Libertas to file State-mandated weekly health reports.  The individual could not or would not provide information about any possible close contacts between Teacher 1 and anyone at Libertas.  The County then spoke with a lower principal who also could not or would not provide information about possible close contacts.  The County was told they could call back on Monday, October 19 and speak with Davis.

Counsel for Ottawa County and counsel for Libertas exchanged emails over the next few days.

On Sunday, October 18, 2020, at 2:08 p.m., Libertas filed its complaint in this Court.  At 7:05 p.m., Mansaray emailed Davis to let him know that one of the teachers (Teacher 1) at Libertas had tested positive for COVID-19.  (ECF No. 21-1 PageID.435-36.)  Mansaray requested that Libertas provide information about "close contacts."  (*Id.* PageID.435.)  Mansaray then sent the email to defense counsel at 7:12 p.m.  (ECF No. 10-1 PagteID.206.)  Around 7:30, defense counsel emailed plaintiff's counsel stating that one of the teachers had a positive test.  (ECF No. 8-2 PageID.140.)  Plaintiff's counsel replied at 8:09 p.m. indicating

that Libertas was aware of the situation.  (*Id.*)  Plaintiff's counsel also advised that Libertas had filed its complaint and asked if defense counsel would accept service.  (*Id.*)  A copy of the pleading followed at 9:00 p.m.  (*Id.* PageID.137.)

Libertas requested a temporary restraining order, which the Court denied at 4:38 p.m. on Monday, October 19.  (ECF No. 7.)

Sometime "after business hours on Monday" (ECF No. 8 PageID.113), Ottawa County sent the Second Cease and Desist Order to Libertas (ECF No. 8-1 PageID.119-21). This order concerned Teacher 1 and did not assert violations of the October 9 Emergency Order.[4]  The order was issued under Michigan Compiled Laws § 333.2433 and § 333.2453 and also cites § 333.2234 and § 333.2251.  The order sets forth "determinations," including (1) Teacher 1 was contagious while at school on October 8, (2) Libertas did not notify the County of the case, (3) Libertas refused to provide information about any close contacts with the teacher.  The County then ordered Libertas to take certain actions no later than 5:00 p.m. on Tuesday, October 20.  Libertas had to provide the County with the names and contact information for students, teachers, staff and volunteers who had close contact with the Teacher 1 and a list of any school assemblies or events held on October 8 that Teacher 1 attended.  The other portions of the order concerned isolation and quarantine for groups of individuals the County had a reason to believe were exposed to Teacher 1.  The order indicated that Libertas could respond directly or through counsel.

---

[4]      In fairness, the Order does state that Libertas "informed ODCHP that they do not require or enforce mask wearing or social distancing during school attendance." (PageID.120.)  The order, however, does not demand compliance with those requirements of the October 9 Emergency Order.

Over the next two days, counsel exchanged emails about Teacher 1.  (ECF No. 11-2.)  Fairly summarized, Libertas denied that there were any "close contacts" because Teacher 1's symptoms were not onset until the evening of October 10.  Libertas reasoned that she was not at school or interacting with anyone at school 48 hours before her symptom appeared.  Libertas obtained Teacher 1's health records, which indicated that the symptoms were onset on October 10.  The County insisted that Teacher 1 had "close contacts" because she was contagious while at school on October 8.  The County's records indicated that Teacher 1 had symptoms as early as October 6 and as late as October 9.

On October 21, 2020, the County received another phone call about a teacher at Libertas.  Mansaray testified that, in this phone call, the County was told that a second teacher, Teacher 2, had tested positive for COVID-19.  (*See* ECF No. 10-1 Mansaray Aff. ¶ 18 PageID.190.)[5]  Mansaray testified that she checked the County record, located the record for Teacher 2 and found that Teacher 2 declined to inform the County of employment location.  (*See id.*)  Mansaray testified that she then checked Libertas' website and determined that someone with the same name taught at Libertas.

On October 21, 2020, the County issued a Third Cease and Desist Order.[6]  (ECF No. 11-1 PageID.227-229.)  This order relies on the same provisions of the Public Health Code as the Second Cease and Desist Order.  Like the second order, this order does not

---

[5]      The affidavit was filed with the Court on October 22 and references a telephone call that occurred on October 21.  The line between Mansaray's signature and the signature of the notary public states that the affidavit is subscribed and sworn on October 19.  (PageID.191.)

[6]      The order is dated October 19.  (PageID.229.)  The order states that certain events occurred on October 21.  At the hearing, plaintiff's counsel made reference to the fact that one of the Cease and Desist Orders contained an incorrect date.

assert violations of the October 9 Emergency Order.  Nor does this order require Libertas to follow the requirements of the October 9 Emergency Order.  As part of the "determinations" in this order, the County recites the requirements contained in the Second Cease and Desist Order and then states that "Libertas did NOT provide any of the information required in the October 19, 2020 Order and is, therefore in violation of this Order." (PageID.228.)  The order determined that Libertas failed to report the infections of either teacher to the County and required by Michigan Administrative Rule 325.173(9)(a) and (b).[7]  The order determined that Libertas failed to identify the students, classes, and contacts with staff that were necessary for contact tracing, which violated Rule 325.174(2)(a)-(f). The order made other determinations as well.  The County then required Libertas to do the following:

> A.  Libertas must notify the parents of all students attending Libertas School and Libertas staff using the attached letter, that there is an outbreak of COVID-19 associated with Libertas School and also provide a copy of this Cease and Desist Order and must publish the Public Notice on its website as required by Director Gordon's October 6, 2020 Emergency Order;
>
> B.  Libertas must provide to OCDPH the names and contact information of all known cases of COVID-19 among students and staff associated with Libertas school;
>
> C.  Libertas must provide OCDPH a list of names and contact information for students, teachers, staff and volunteers that meet the definition provided above of a "close contact" for [Teacher 2] and [Teacher 1] including the class list for their classroom(s) and a listing of any in-person school assemblies or school events held during their attendance at school during the period of October 8 to the present; and

---

[7]      The order also stated that the failure to report violated subrules (7) and (8), which defense counsel admitted at the hearing was an error.

D.  Failure to comply with this order will leave ODCPH without the necessary information to complete a full investigation therefore we must assume that all students and staff are close contacts.  All close contacts must remain in quarantine for a period of 14 days from Thursday October 22 through Thursday November 5, 2020, therefore, unless there is full compliance with A, B, and C above, Libertas is ordered to cease and desist all in person activities as of 12:01 p.m. on Thursday, October 22, 2020.

(PageID.229.)

Although defense counsel does not explicitly reference the Third Cease and Desist Order, in an email to plaintiff's counsel at 8:25, defense counsel states that if Libertas does not act by noon tomorrow, "closure notices will be posted on your client's facility beginning tomorrow afternoon.  If necessary we will seek law enforcement vehicles on Friday to block entry."  (ECF No. 11-2 PageID.234.)  Libertas was aware of the Third Cease and Desist Order that evening because, at 9:31 p.m., plaintiff's counsel responds and states, among other things, Please rescind the three orders accordingly." (*Id.* PageID.233.)

On October 22, 2020, the County filed a statement indicating that it intended to seek an injunction to enforce face coverings and social distancing at Libertas.[8]  (ECF No. 10 PageID.174.)  Libertas filed a brief with the Court summarizing the recent events.  (ECF No. 11.)  The Court then ordered the parties to each file a motion and supporting brief for a preliminary injunction and a response brief and scheduled a hearing for October 28.  (ECF No. 13.)

---

[8]    As part of the Order denying Libertas' request for a temporary restraining order, the Court required the County to file a statement indicating whether it intended to enforce the First Cease and Desist Order.

Around 9:00 p.m., the County posted closure notices at the school.  Libertas remains closed.

## II.

Libertas has two pending motions for a preliminary injunction.  The first motion requests a temporary restraining order or a preliminary injunction.  (ECF No. 2.)  Libertas request the Court enjoin Defendants from enforcing against Libertas (1) the October 9 Emergency Order issued under Michigan Compiled Laws 333.2253 and (2) any criminal or civil enforcement action under the First Cease and Desist Order.  (PageID.51.)  The second motion for a preliminary injunction requests relief contains additional requests.  (ECF No. 17.)  Libertas askes the Court to enjoin Defendants from

> (1) enforcing the October 9 Emergency Order under MCL 333.2253;
> (2) enforcing the October 6 Emergency Order which requires reporting of COVID cases;
> (3) taking criminal or civil enforcement action against Libertas for the First Cease and Desist Order;
> (4) taking criminal or civil enforcement action against Libertas for the Second Cease and Desist Order;
> (5) taking criminal or civil enforcement action against Libertas for the Third Cease and Desist Order; and
> (6) continuing to require Libertas to remain closed and/or taking any criminal or civil enforcement action against Libertas under the building closure order posted on October 22.

(PageID.300-01.)

The County requested the Court "preliminarily enjoin Libertas from operating in-person classes until it follows masking; gathering, and reporting requirements of the Michigan Public Health Laws."  (ECF No. 15 PageID.281.)  As indicated above, at the close of the

hearing, the County asked the Court not to provide any injunctive relief.  The Court concludes that the County has withdrawn its motion.

### III.

Rule 65 of the Federal Rules of Civil Procedure governs requests for preliminary injunctions.  District court exercise their discretion when granting or denying preliminary injunctions.  *Planet Aid v. City of St. Johns, Michigan*, 782 F.3d 318, 323 (6th Cir. 2015).  When deciding a motion for a preliminary injunction, a court should consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) the balance of equities; and (4) whether granting injunctive relief services the public's interest.  *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020).  When a court considers the four factors as part of a constitutional challenge, "'the likelihood of success on the merits often will be the determinative factor.'"  *Thompson v. DeWine*, —F.3d—, 2020 WL 5742621, at *2 (6th Cir. Sept. 16, 2020) (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).  The United States Supreme Court has stated that a preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citation omitted) that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

### IV.

The Court first addresses Libertas' claim, in the complaint and motions, that Defendants have demonstrated a religious animus and that the multiple cease and desist

orders constitute retaliation.  If successful, Libertas' claim would establish a basis for this Court to enjoin all of the cease and desist order issued by the County.

As part of its closing argument, Libertas withdrew any claim that the County's orders were motivated by religious animus.  The Court will not consider a religious animus claim as outlined in *Church of the Lukumi Babalu Aye*, 508 U.S. 520, 534 (1993).

Libertas contends that various "retaliatory orders" issued by the County are attempts to enforce the October 9 Emergency Order.  (ECF No. 18 PageID.311.)  Although Libertas did not plead a retaliation claim in its complaint, the Court considers the claim as relevant to the competing requests for injunctive relief.  For a First Amendment retaliation claim, the moving party must show (1) it engaged in protected conduct, (2) it suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct and (3) a causal connection between the two.  *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).  The Court assumes that filing a lawsuit constitute protected conduct.

Libertas has not demonstrated a likelihood of success on the merits that any of the County's actions were retaliatory.  Libertas acknowledges that its argument is subject to the logical fallacy *post hoc ergo propter hoc*.  (ECF No. 18 n.5 PageID.311.)  Loosely translated from Latin, "after this therefore because of this," a *post hoc* argument finds causation simply on the basis of a temporal sequence.  A *post hoc* argument fails because a temporal sequence does not, by itself, establish causation.  On the record before this Court, the only inference that supports retaliation claim arises from the sequence of events.

The other facts or evidence on which Libertas relies utterly fails to demonstrate causation.  Both Mansaray and Lisa Stefanovsky explicitly denied any animus or retaliatory

motive for the decisions and actions on the part of the County.  On this topic, both witnesses were credible.  Libertas' other attempts to prove that it was targeted by the County do not change this conclusion.  Based on Davis' testimony, the Court can conclude that other schools do not strictly enforce the various mandates in the October 9 Emergency Order. This conclusion does not help Libertas.  Mansaray testified that the County does not proactively seek out violations of the Emergency Orders.  The County investigates when people bring complaints to the County.  And, Libertas has not established that the County received and ignored complaints about other schools in the county.  Libertas argues that the County lacks credibility because County Board members conducted a meeting without wearing face coverings.  This argument employs another logical fallacy, tu quoque.  Loosely translate from Latin, "you also," the fallacy is an appeal to hypocrisy and attempts to discredit or impeach an opponent's argument by attacking the opponent's personal behavior as inconsistent with the conclusion of the argument presented.  The Court does not find this argument persuasive.

## V.

Next, the Court considers the Third Cease and Desist Order, which led to the closure of Libertas.  Libertas has standing to challenge the school closure, and no party suggests otherwise.  The claims outlined in the complaint, however, assert injuries that arise only while the school is operating.  Libertas has standing to raise the claims in the complaint on the basis of the injuries to students, parents and teachers while they are in school.  Libertas does not have standing to assert injuries to students, parents and teachers that arise outside of the school context.  If the school is closed, the injuries resulting from the mandates for (1) face

covering while in school, (2) social distancing classrooms, and (3) limitations the size of gatherings in schools, are not ripe for review.

A.

The record establishes a factual basis for the County to enforce the Third Cease and Desist Order.  The County determined that Libertas did not provide the information required by the Second Cease and Desist Order.  The second order required Libertas to provide information about students, teachers and staff who had "close contact" with Teacher 1 on October 8.  The second order defined "close contact" as "individuals who have a cumulative exposure of at least 15 minutes of being within 6 feet of a person with a confirmed or probable case of COVID-19."  (PageID.119.)  As part of the second order, the County determined that Teacher 1 "reported her symptom onset to be 10/9/20.   The period of contagiousness for COVID-19 is 48 hours prior to symptom onset therefore, for this case it is 10/7/2020."[9]  (PageID.120.)

The record contains evidence that Teacher 1 is a teacher at Libertas and present at Libertas on October 8.  The parties appear to agree which grade Teacher 1 teaches.  Libertas does not assert that no individual at the school meets the cumulative exposure criteria (individual within 6 feet for more than 15 minutes of a contagious person).

Libertas responded to the second order through counsel, who disputed whether Teacher 1 was at school 48 hours prior to the onset of symptoms.  Relying on Teacher 1's

---

[9]      The CDC guidelines and other documents submitted to this Court in this lawsuit use the phrase "2 days" for the period of contagiousness, the second order issued by the County used the phrase "48 hours."

medical records from her provider, Libertas asserted that her symptoms were onset in the evening of October 10.   Libertas concluded that it did not need to provide the contact information for anyone at the school because Teacher 1 had already left school by the afternoon on October 8, 48 hours prior to the onset of her symptoms.

On this factual dispute, the evidence supports the County and not Libertas.  All parties agree that different documents provide different information about when Teacher 1's symptoms onset.  The County's records contain the following statement:

> She states that she was being treated starting 10/6/2020 for a sinus infection that she had for awhile.  States that late in the evening of 10/8/2020 she developed a fever and then on Friday 10/9/2020 the rest of her symptoms. She states that her PCP [primary care provider] is going with 10/9/2020 as her onset date.

(ECF No. 10-3 PageID.217.)   At the hearing, the County also introduced the Michigan Disease Surveillance System (MDSS) record for Teacher 1.  (Exhibit A.)  Mansaray testified that MDSS case record is created by either a health care provider or lab and is submitted to the State for a positive COVID-19 test.  Mansaray believed this case record was created and submitted by a health care provider because the record included an onset date, a conclusion based on information not available to a lab.  The record indicates symptom onset on October 9.  The County also introduced a second MDSS record, a form or survey Mansaray testified would have been completed by Teacher 1.  (Exhibit B.)  On this form, symptom onset began on October 6.  The person completing the form reported that isolation began on October 8 and that the person had no close contacts with anyone.

Teacher 1's medical records, on which Libertas relies, confirms that Teacher 1 was at school during her period of contagiousness, 48 hours prior to the onset of symptoms.[10] The medical record was created on Monday, October 12 for a virtual, not an in-person, meeting.  (PageID.466.)  Teacher 1 reported that she had a "fever new in the past few days but fever free X 2 days."  (*Id.*)  The same page states "positive for decreased appetite and fever (100.5 - not since Saturday)."  (*Id.*)  On two different pages, the record states Teacher 1's symptom onset was 10/10/2020.  (PageID.468 and PageID.477.)  The medical record entry does not indicate a time for onset of symptoms, only a day.  48 hours before 10-10 is 10-8.  Teacher 1 was at school and was teaching on October 8.

Finally, Libertas has not established that the Court should decline to enforce the cease and desist orders because the County failed to report positive COVID-19 tests to Libertas. Director Gordon's October 6 Emergency Order directs local health departments to, within 24 hours of learning of a probable or confirmed case of COVID-19, notify the school. Libertas contends that the County did not follow this Emergency Order for Teacher 1 or Teacher 2.  The record establishes that, as part of the MDSS survey or other form submitted to the County, the teachers did not disclose that they worked at Libertas.  While the County knew Teacher 1 and Teacher 2 had positive COVID tests, the County did not know their employer or employers.  The record also establishes when the County later determined, through anonymous phone calls and subsequent investigation, that the teacher were employed at Libertas, the County contacted Libertas about each teacher within 24 hours.

---

[10]  The medical records are filed under seal.  (ECF No. 23-1.)

## B.

On the arguments presented in the briefs and at the hearing, the Court finds that the County has a legal basis for enforcing the Third Cease and Desist Order.  The second and third orders rely on provisions of the Public Health Code which grant authority to local health departments, Michigan Compiled Laws §§ 333.2433 (duties of local health departments) and 333.2435 (powers of local health departments).  This Court "must presume a statute is constitutional and construe it as such, unless the only proper construction renders the statute unconstitutional." *In re Certified Questions*, 2020 WL 5877599, at *12 (quoting *Grebner v. State*, 744 N.W.2d 123, 125 (Mich. 2007).  At this point in the litigation, Libertas has not challenged the County's legal authority as a local health department.

In part, this is a pleading issue.  While Libertas filed its complaint, the County was seeking to enforce the restrictions in the October 9 (or October 5) Emergency Order.  All of the claims in the complaint identify injuries arising from the requirements in the Emergency Orders.  The second and third cease and desist orders issued after the complaint was filed.  The second and third cease and desist orders requested information and made determinations about whether Libertas complied with the request for information.  And, while Libertas' second motion for a preliminary injunction does ask the Court to prevent enforcement of the second and third order, the motion does not provide any new reasons for that request.  Libertas may have a factual dispute relevant to the requested information, but it has not advanced any legal basis for the Court to enjoin enforcement.

Libertas has not established a sufficient constitutional concern about the County's request for information.  Libertas argued that it did not have to provide the requested information under the holding in *NAACP v. Alabama*, 357 U.S. 449 (1958).  The facts and the holding in *NAACP* are easily distinguishable from the facts here.  In the relevant part of the *NAACP* opinion, the question was whether Alabama had a compelling or substantial interest in the names of the rank-and-file members of the NAACP.  *Id.* at 464.  Alabama had a foreign corporation statute that required foreign corporations doing business in Alabama to file its corporate charter, designate a place of business, and identify an agent for service of process.  *Id.* at 451.  The NAACP had not complied with the statute.  During the litigation in the state courts, the NAACP (1) admitted its presence and conduct of activities in Alabama since 1918, (2) offered to comply with the state statute while preserving its objection that the statute did not apply, (3) provided the Alabama Attorney General with its business records, its charter, its statement of purpose, the names of its officers and directors and the total number of Alabama members as well as the amount of their dues.  *Id.* at 464-65.  The NAACP would not, however, disclose the names of its members.  The Court held that "whatever interest the State may have in obtaining the names of ordinary members has not been shown to be sufficient to overcome petitioner's constitutional objections to the production order."  *Id.* at 465.

Unlike the State of Alabama, the County established a compelling interest for the names and contact information requested in the cease and desist orders.  The County requested the identification of students, teachers and staff would were exposed as close contacts to Teacher 1.  The information requested is necessary for contact tracing and

enables the County locate individuals who have been exposed to the coronavirus and order those individuals to quarantine. The County has established that such measures are a necessary tool to slow the spread of the virus. The County likely has no other means by which it can gather the requested information. Unlike the State of Alabama, the County did not ask for the names of all members of the organization.

## C.

In an abundance of caution, the Court will consider Libertas' state law claims to determine if the claims possibly challenge the County's authority to issue the second and third cease and desist order.

### 1.

In Count IV, Libertas asserts that the October 9 Emergency Order violates the separation of powers and the non-delegation clause of the Michigan Constitution. Libertas brings this claim as an as-applied challenge, not a facial challenge. Libertas request the Court (1) declare that the "October 9 Order is unconstitutional and unenforceable *against Libertas, its teachers, its students and their parents*, because it stems from impermissible delegations of legislative authority to the Executive Branch, a violation of the Michigan Constitution" and (2) enjoin "Defendants from enforcing the October 9 Order *against Libertas, its teachers, its students, and their parents*." (PageID.23 emphasis added.)

A facial challenge to a statute asserts that the law is incapable of any valid application while an as-applied challenge alleges the infringement or denial of a specific right or a particular injury resulting from the government act. *Michigan Alliance for Retired American v. Sec'y of State*, —N.W.2d—, 2020 6122745, at *4 (Mich. Ct. App. Oct. 16, 2020) (citations

omitted); *see Bruley v. City of Birmingham*, 675 N.W.2d 910, 915 (Mich. Ct. App. 2003) ("An 'as applied' challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution.") (quoting *Paragon Props. Co. v. City of Novi*, 550 N.W.2d 772, 775 (Mich. 1996)); *IME v. DBS*, 857 N.W.2d 667, 675 (Mich. Ct. App. 2014) (holding that for a facial challenge the moving party must show that there are no set of circumstances under which the statute would be valid).   When distinguishing between the two types of challenges, courts consider the relief sought when determining whether the challenge is facial or as-applied.  *Id.* at *5 ("The *Reed* Court declared that the label attached to the claim was not dispositive; rather, the Court held that the deciding factor was that the relief sought by the plaintiffs would 'reach beyond the particular circumstances of these plaintiffs.'") (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 914 (2010)).   The injuries Libertas allegedly suffers arise not from the statute itself, but from the October 9 Emergency Order, a particular government act.

The Michigan Supreme Court summarized the concerns and considerations for a non-delegation challenge in *In re Certified Questions*.   *In re Certified Questions*, 2020 WL 5877599, at *12-*18.   In that case, the Court considered whether the EPGA violated the separation of powers doctrine.   The Court did not consider an as-applied challenge to the statute.   Nevertheless, the discussion is helpful.   For separation of powers questions, courts consider (1) scope or subject matter, (2) duration, and (3) standards.   *Id.* at *15.

In its second motion for a preliminary injunction, Libertas describes why the October 9 Emergency Order violates the separation of powers doctrine.   Section 333.2253 authorizes the director of the Michigan Department of Health and Human Services, upon determining

that control of an epidemic is necessary to protect public health, (1) to prohibit the gathering of people for any purpose and (2) establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws. Mich. Comp. Laws § 333.2253(1).

Libertas has not demonstrated a likelihood of success on the merits for its claim that the Second and Third Cease and Desist Orders should not be enforced on the basis of a separation of powers or non-delegation claim.  Neither order cites § 333.2253 as authority. Both do cite § 333.2453 as authority.  While the two statutes are remarkably similar, as part of its closing argument, Libertas explicitly disclaimed any challenge to § 333.2453.  The Court notes that the information requested in the two orders finds support in the Michigan Administrative Code.  Under the Code, schools must report, within 24 hours, "occurrences among those in attendance of any of the serious communicable diseases listed and maintained by the department as required by MCL 333.5111(1).[11]  Mich. Admin. Code § 324.172(9)(a).  COVID-19 is listed as one of the communicable diseases on the list the State of Michigan maintains under § 333.5111(1).  Teacher 1 was in attendance at school on October 8.  And, § 325.174(2)  of the Administrative Code requires the disclosure to local

---

[11]     Libertas misreads the regulation.  Libertas contends that two conditions, (a) and (b), must be present for the reporting requirement to exist.  The regulation states
> (9)  A primary or secondary school, . . ., shall report, within 24 hours of suspecting, both of the following to the appropriate health department:
> (a) The occurrence among those in attendance of any of the serious communicable diseases . . . .
> (b) The unusual occurrence, outbreak, or epidemic of any disease, infection or condition among those in attendance.

Mich. Admin. Code §325.173(9).  The prepositional phrase that begins with the word "within" specifies the amount of time a school has to make a report.  Reading the regulation by skipping or omitting the prepositional phrase clarifies that the school must report "both" (a) and (b).

health department investigators of the "medical, epidemiologic, and other information pertaining to . . . (d) Individuals who were potentially exposed to the designated condition." Mich. Admin. Code § 325.174(2)(d).  The narrow information sought in the two orders belie any separation of powers concerns about scope, duration or standards, as those order apply to Libertas.

2.

Libertas asserts that the October 9 Emergency Order violates the right to procedural due process found in the Michigan and the federal constitutions.  Libertas argues that the County threatened to close the school if it did not comply with the requirements of the October 9 order.  Libertas reasons that, before any person can be deprived of a right or liberty interest, that person is entitled to a hearing to challenge the order.

Ordinarily, due process demands some sort of hearing before the deprivation of a liberty or property interest.  *Hodel v. Virginia Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981).  However, "summary administrative action may be justified in emergency situations."  *Id.* at 300 (collecting cases).  Our Supreme Court has held that

> Protection of health and safety of the public is a paramount government interest which justifies summary administrative action.  Indeed, deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action.  Moreover, the administrative action provided through immediate cessation orders responds to situations in which swift action is necessary to protect public health and safety.

*Id.* at 300-01 (internal citations omitted).  Multiple district courts have cited this portion of *Hodel* to deny preliminary injunction challenges to COVID-19 related procedural due process claims.  *See, e.g., Page v. Cuomo*, —F. Supp. 3d—, 2020 WL 458329, at *12 (N.D.N.Y

Aug. 11, 2020); *Carmichael v. Ige*, —F. Supp. 3d—, 2020 WL 3630738, at * (D. Haw. July 2, 2020) (14 day travel quarantine); *World Gym, Inc. v. Baker*, —F. Supp. 3d—, 2020 WL 4274557, at *4 (D. Mass. July 24, 2020) (shut down order); *Benner v. Wolf*, 461 F. Supp. 3d 154, 162 (M.D. Pa. 2020); *910 E. Main LLC v. Edwards*, —F. Supp. 3d—, 2020 WL 4929256, at *10 (W.D. La. Aug. 21, 2020).

Libertas has not demonstrated a likelihood of success on the merits for a procedural due process challenge to the second and third cease and desist orders. Under the sort of emergency situation presented by COVID-19, courts have found that a pre-deprivation hearing is not required. The two orders required information be provided, indicated a rather short time to comply, and outlined possible consequences. Libertas cannot claim that it was not on notice of the possibility that it might be shut down. Libertas has not asserted the lack of or the inadequacy of post-deprivation proceedings.

## VI.

Having concluded that the present shut down of Libertas does not require the Court to resolve the injuries that Libertas alleges from mandates requiring face coverings, social distancing and occupancy limits, the Court will abstain from considering those claims.

The *Pullman* abstention doctrine "acknowledges that federal courts should avoid the unnecessary resolution of federal constitutional issues and that state courts provide the authoritative adjudication questions of state law." *Brown v. Tidwell*, 169 F.3d 330, 332 (6t6h Cir. 1999) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 508 (1985) (O'Connor, J. concurring)). "The equitable considerations of *Pullman* abstention are typically applied when an unsettled state-law question is best decided by or already pending in state courts."

*Hill v. Snyder*, 900 F.3d 260, 265 (6th Cir. 2018). The Court concludes that, in light of the recent holding in *In re Certified Questions* concerning the separation of powers, Michigan Compiled Laws § 333.2253 is an unsettled state law. The scope of the statute is more limited that the EPGA, as § 333.2253 arises only for use in epidemics. But, the duration of the powers and the standards for exercise of the powers are extremely broad, limited only the insuring the "continuation of essential public health services and enforcement of health laws."

The Court also finds that a state court interpretation of the disputed statute generally, and Director Gordon's emergency measures specifically, will avoid the need for a federal constitutional ruling or at least substantially narrow the federal claims in this case. *See Harris Cty. Comm'rs Court v. Moore*, 420 U.S. 77, 84 (1975). The Court is aware of at least one challenge to Director Gordon's mandates currently pending in the State courts. *Semlow Peak Performance Chiropractic v. Whitmer*, No. 20-206-MZ (Mich. Ct. Claims). In addition, abstention is proper when the dispute involves matters "peculiarly within the province of the local courts." *Harris Cty.*, 420 U.S. at 83-84. Under Michigan's Public Health Code, local health departments may bring enforcement actions in the State circuit courts. *See, e.g.,* Mich. Comp. Laws § 333.5205. At the enforcement hearing, the State court might conclude that the social distancing requirements and the occupancy limitation standards do not apply to school classrooms, which would obviate the need for this Court to make a constitutional determination. The State court might conclude that Libertas' instruction is so intertwined with its religious mission that classroom education cannot be functionally distinguished from worship. The State court might conclude that some other exception to facial coverings applies to the students, teachers and staff at Libertas. The Sixth

Circuit has found error where the district court did not follow the doctrine of constitutional avoidance.  *See, e.g., Gannett Outdoor Co. of Michigan v. City of Pontiac*, 948 F.2d 1288 (6th Cir. Nov. 22, 1991) (unpublished table opinion per curiam).

The Court notes one other concern weighing heavily in favor of abstention.  Neither the Governor nor the Director of the Michigan Department of Health and Human Services have been served.  The Attorney General for Michigan has been served but has not yet made an appearance.  The Court is reluctant to enjoin a statewide emergency order or hold a state statute unconstitutional without hearing from any state-level official.

Libertas argues, under *Jones v. Coleman*, 848 F.3d 744 (6th Cir. 2017), the Court should not abstain.  While the factual posture in *Jones* appears similar, one difference between that case and this dispute affects the outcome.  In *Jones*, the plaintiffs brought a facial challenge under the First Amendment.  *See id.* at 750-51.  Here, Libertas has not raised a facial challenge.  Libertas argues that the Emergency Orders violate its First Amendment rights as an as-applied challenged.  At this point in the litigation, the mandates in the Emergency Order cannot be applied to Libertas because it remains closed for different reasons, it refused to provide contact tracing information to the County.

## VII.

The Court declines to grant the injunctive relief sought by Libertas.  Libertas has not demonstrated a likelihood of success on a challenge to the second and third cease and desist orders.  Therefore, the County properly closed the school.  So long as the school is closed for a proper reason that is unrelated to its First Amendment claims, the Court does not need to address those claims.

The Court finds that abstention on the state law issues is proper.  Libertas raises an as-applied challenge to an Emergency Order issued under a public health statute that has not yet been interpreted by any state court.  The order could be interpreted in a manner that would eliminate the need for this Court to reach any constitutional determination.  The state courts could also interpret the statute in a manner that would eliminate the need for any constitutional determination.  Accordingly, if the County wants to enforce, against Libertas, either one of its local orders or the statewide Emergency Order, the County should file an appropriate enforcement action in the state courts and afford those courts the opportunity to consider the local order, the statewide order and the state statute.

## ORDER

Consistent with the accompanying Opinion, the Court

1. **DISMISSES** Defendant Mansaray's motion for a preliminary injunction (ECF No. 15) as withdrawn;

2. **DENIES** Libertas' motions for preliminary injunctions (ECF Nos. 2 and 17); and

3. **ABSTAINS** from resolving Libertas' constitutional claims arising from the enforcement against Libertas of Director Gordon's emergency orders to afford the state courts an opportunity to first address the questions of state law.

**IT IS SO ORDERED.**

Date:  November 3, 2020           /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge