UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

LIBERTAS CLASSICAL ASSOCIATION,

     Plaintiff,

v.

GRETCHEN WHITMER, individually and in
her official capacity as Governor of the State
of Michigan; DANA NESSEL, individually
and in her official capacity as Attorney
General of the State of Michigan; ROBERT
GORDON, individually and in his official
capacity as Director of the Michigan
Department of Health and Human Services;
and MARCIA MANSARAY, individually and
in her official capacity as Deputy Health
Administrator of the Ottawa County
Department of Health,

     Defendants

Case No. 1:20-cv-997
Honorable Paul L. Maloney

**BRIEF IN SUPPORT OF DEFENDANT
MANSARAY'S MOTION FOR
JUDGMENT ON THE PLEADINGS
AND/OR SUMMARY JUDGMENT**

---

Ian A. Northon (P65082)
Adam J. Baginski (P83891)
RHOADES MCKEE PC
Attorneys for Plaintiff
55 Campau Ave NW, Suite 300
Grand Rapids, MI 49503
(616) 235-3500

Douglas W. Van Essen (P33169)
SILVER & VAN ESSEN, P.C.
Attorney for Defendant Mansaray
300 Ottawa Avenue, NW, Suite 620
Grand Rapids, MI 49503
(616) 988-5600
dwv@silvervanessen.com

Daniel J. Ping (P81482)
John G. Fedynsky (P65232)
STATE OF MICHIGAN
Attorneys for Defendants Whitmer and Gordon
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632
pingd@michigan.gov
fedynskyj@michigan.gov

---

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT .................................................................................................. 5

I.    Standards of Review ........................................................................... 5

II.   Libertas's Cconstitutional Claims Against Mansaray and the County Are Ripe for Review. ......................................................................... 6

III.  Libertas's Constitutional Claims Against the Ottawa Defendants Do Not Survive the Deferential *Jacobson* Standard. .............................................. 8

IV.  Libertas's Free Exercise Rights Were Not Violated Because During a Pandemic Masking and Social Distancing Requirements Are Neutral Regulations of General Applicability and Libertas's Objections to These Requirements Are Not Motivated by a Sincere Religious Belief. .................................................. 10

    A.   The County's Consistent, Complaint-Based Enforcement of Masking and Social Distancing at K-12 Public, Private, Secular, and Religious Schools Is Neutral and Generally Applicable. ........................................................... 10

    B.   Libertas's Admissions Foreclose a Reasonable Jury from Finding that Their Objection to Masking and Social Distancing Is Motivated by a Sincere Religious Belief. ....................................................................... 14

    C.   Requiring K-12 Students to Mask and Socially Distance Is the Least Restrictive Means of Achieving the Ottawa Defendants' Compelling Interest in Stopping the Spread of COVID-19. ................................................................. 17

V.   Libertas's Remaining Constitutional Claims Fail Because They Are Contingent on a Successful Free Exercise Claim. .................................................... 18

    A.   The Ottawa Defendants Have Not Unconstitutionally Interfered with the Parents of Libertas's Students Right to Association with One Another or with Libertas for a Religious Purpose. ....................................................... 19

    B.   The Ottawa Defendants Have Not Unconstitutionally Interfered with the Libertas Parents' Right to Direct the Upbringing of Their Children. ............................. 21

    C.   Libertas Was Given Adequate Procedural Due Process to Protect Its Constitutional Rights. ...................................................................... 22

CONCLUSION ............................................................................................. 24

## INDEX OF AUTHORITIES

**Cases**

*Abercrombie & Fitch Stores Inc. v. Am. Eagle Outfitters Inc.*, 280 F.3d 619 (6th Cir. 2002)........ 25

*Agudath Isr. of Am. v. Cuomo*, 980 F.3d 222 (2d Cir. 2020) ................................................. 17

*Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003) ............................................................... 19

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).......... 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................ 5

*Barrett v. Steubenville City Schs.*, 388 F.3d 967 (6th Cir. 2004).............................................. 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............. 5

*Boy Scouts of Am. v. Dale*, 530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000)............. 19

*Burwell v. Hobby Lobby Stores Inc.*, 573 U.S. 682, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) 14, 18

*Cantwell v. Conn.*, 310 U.S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940) ................................. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................... 6

*CH Royal Oak LLC v. Whitmer*, 472 F. Supp. 3d 410 (W.D. Mich. 2020)............................... 9

*Christian Legal Soc. Chapter v. Martinez*, 561 U.S. 661, 130 S. Ct. 2971, 177 L. Ed. 2d 838 (2010) ................................................................................................................. 11

*Doe v. Cong. of the United States*, 891 F.3d 578 (6th Cir. 2018) ................................. 14, 15, 16

*Emp. Div. Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) ......................................................................................................... 10, 13, 14

*England v. Louisiana Bd. of Med. Examiners*, 375 U.S. 411, 84 S. Ct. 461, 11 L. Ed. 2d 440 (1964) ................................................................................................................... 7

Fed. R. Civ. P. 12(d)............................................................................................................. 24

*Gen. Conf. Corp.  Seventh-Day Adventists v. McGill*, 617 F.3d 402 (6th Cir. 2010) ................. 15

*Gottfried v. Med. Planning Servs. Inc.*, 142 F.3d 326 (6th Cir. 1998)....................................... 7

*Hadix v. Johnson*, 230 F.3d 840 (6th Cir. 2000) ................................................................... 22

*Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. Educ.*, 822 F.3d 831 (6th Cir. 2016) ..... 19, 20

*Hardin v. Straub*, 954 F.2d 1193 (6th Cir. 1992) ............................................................... 3, 7

*Helena Agri-Enters. LLC v. Great Lakes Grain LLC*, 988 F.3d 260 (6th Cir. 2021) ................. 24

*Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)....................... 22

*Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015) .......................... 15, 18

*Hunter v. Sec'y of U.S. Army*, 565 F.3d 986 (6th Cir. 2009) ................................................... 5

*Jacobson v. Mass.*, 197 U.S. 11, 25 S. Ct. 358, 49 L. Ed. 643 (1905)..................................... 8

*Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008) ......................................................... 5

*JPMorganChase Bank N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007)......................................... 5

*Kentucky ex rel. Danville Christian Acad. Inc. v. Beshear*, 981 F.3d 505 (6th Cir. 2020)............ 12

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017).................................................................... 25

*Ky. v. Graham*, 473 U.S. 159(1985) .................................................................................. 3

*League of Indep. Fitness Facilities & Trainers Inc. v. Whitmer*, 468 F. Supp. 3d 940(W.D. Mich. 2020)................................................................................................................ 9

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir.2000) ................................................................. 23

*Little Sisters of the Poor Saints Peter & Paul Home v. Penn.*, ___ U.S. ___, 140 S. Ct. 2367, 207 L. Ed. 2d 819 (2020) ............................................................................................... 17

*Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439 (6th Cir. 2009) ......................................... 6

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ........................... 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ............................................................................................................. 5

*McDaniel v. Paty,* 435 U.S. 618, 98 S. Ct. 1322, 55 L. Ed. 2d 593 (1978).......................... 10

*Nikolao v. Lyon*, 875 F.3d 310 (6th Cir. 2017) ................................................................. 10

*Ohio Ass'n Independent Schs. v. Goff*, 92 F.3d 419 (6th Cir. 1996)...................................... 21

*Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233 (6th Cir. 1991) ...................... 5

*Prater v. City of Burnside*, 289 F.3d 417(6th Cir. 2002)................................................ 10, 11

*Prince v. Mass.*, 321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944)..................................... 21

*Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020) ................................................. 10, 11, 12, 14

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).................. 19

*Roman Catholic Diocese of Brooklyn v. Cuomo*, ___ U.S. ___, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020) ............................................................................................................ 17, 24

*Rondigo L.L.C. v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011) ....................................... 5

*Runyon v. McCrary*, 427 U.S. 160, 96 S. Ct. 2586, 49 L. Ed. 2d 415 (1976) ....................... 21

*S. Bay United Pentecostal Church v. Newsom*, ___ U.S. ___, 140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) ........................................................................................................ 9, 17, 24

*Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) .................................... 23, 24

*Strehlke v. Grosse Pointe Pub. Sch. Sys.*, 654 F. App'x 713 (6th Cir. 2016)........................... 25

*Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694 (10th Cir. 1998).................................... 12

*Terry v. Tyson Farms Inc.*, 604 F.3d 272 (6th Cir. 2010) .................................................... 5

*Trinity Lutheran Church of Columbia Inc. v. Comer*, ___ U.S. ___, 137 S. Ct. 2012, 198 L. Ed. 2d 551 (2017) ................................................................................................ 11, 12, 14

*Vandiver v. Hardin Cnty. Bd. of Educ.*, 925 F.2d 927 (6th Cir. 1991)..................................... 12

*West v. Atkins,* 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 4664 (1988) ............................ 7

**Statutes**

42 U.S.C. § 1983................................................................................................................ 7

Mich. Comp. Laws § 333.2253........................................................................................... 6

**Other Authorities**

Herstein, J. J., Degarege, A., Stover, D., Austin, C., Schwedhelm, M. M., Lawler, J. V. Donahue, M. (2021). Characteristics of SARS-CoV-2 Transmission among Meat Processing Workers in Nebraska, USA, and Effectiveness of Risk Mitigation Measures. *Emerging Infectious Diseases*, *27*(4), 1032-1038. https://doi.org/10.3201/eid2704.204800................................ 25

**Rules**

Fed R. Civ. P. 12(c) ........................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 5, 10, 14

Fed. R. Civ. P. 19............................................................................................................. 19

Fed. R. Civ. P. 56............................................................................................................. 14

**Constitutional Provisions**

U.S. Const. Am. XIV ....................................................................................................... 23

## INTRODUCTION

The COVID-19 pandemic needs no introduction, especially to this Court. Unfortunately, after the stringent restrictions of the early days of the pandemic were lifted, public health guidelines to manage the pandemic became a contested political issue in a few communities. One such "community" was Libertas Classical Association, a non-denominational Christian school in Ottawa County. In July 2020, Libertas's board—having consulted the parents of its students—decided that it would not enforce the State of Michigan's Director of the Department of Health and Human Services' mask mandates nor social distancing rules. After two days of testimony, this Court is well acquainted with what happened next. The Ottawa County's Public Health Department ("OCDPH") received multiple complaints about the lack of masking and distancing at Libertas. As she had done with respect to similar complaints about other schools, Defendant Marcia Mansaray, Deputy Director of OCDPH, contacted Libertas and sought voluntarily compliance. Unlike other schools, Libertas chose to continue to ignore the State orders or ensuing local OCDPH orders to masks and socially distance. Libertas sued. When this Court refused to grant injunctive relief, it suspended classes. After failing to obtain relief in the Sixth Circuit, Libertas resumed in-person learning with a masking requirement in place.

Libertas failed to identify a religious basis for its objection to masking and social distancing, both in its pleadings and in the testimony of its board president and its headmaster. Instead, Libertas has emphasized the suffusion of religious practice into every aspect of its operation and instruction, as if to argue that *any* decision a religious institution makes is a *per se* exercise of religion within the meaning of the First Amendment. The law, however, does not permit Libertas to decide for itself which governmental directives it will follow just because Libertas is organized around religion. Libertas's constitutional claims against Mansaray therefore fail.

## STATEMENT OF FACTS

This Court set forth a detailed and concise statement of the relevant facts in its November 3, 2020, Opinion and Order Denying Plaintiff's Motion for Preliminary Injunction and Order of Abstention. (Op. & Or., ECF No. 30, PageID.499–508). Additionally, several witnesses at the three-day hearing on the preliminary injunction motion testified to the following:

Matthew Williams, the president of Libertas's board, testified that during the initial shelter-in-place orders of March to May 2020, Libertas transitioned to virtual learning. (Tr. I, ECF No. 41, PageID.889). Williams testified that parents were dissatisfied with the virtual learning program because the children were missing out on the unique benefits of a classical education. (*Id.*, PageID.892). He also testified that prior to the COVID-19 pandemic, Libertas voluntarily closed due to the spread of a different virus. (*Id.*, PageID.911). Williams admitted that the "temporary interference with the school . . . didn't ultimately interfere with [Libertas's] religious practices." (*Id.*) Williams also admitted that none of Libertas's religious tenets were violated when Libertas was forced to practice virtual learning in March, April, and May 2020 due to the statewide shelter-in-place order. (*Id.*, PageID.916).

According to Headmaster Robert Davis, parents informed him over the summer of 2020 that they would not return to Libertas in the fall if school was virtual again. (*Id.*, PageID.915–52). Davis surveyed the parents about COVID precautions, and they "unanimously" reported to him that they did not want Libertas to enforce mask-wearing. (*Id.* PageID.953). The Board therefore decided that it would not require students to wear masks, but parents could send their children in masks if they so chose. (*Id.*, PageID.917). Williams admitted that mask-wearing does not violate any of Libertas's religious beliefs. (*Id.*, PageID.920–21). Davis offered no religious justification for the parents' objection to required mask-wearing.

2

Defendant Marcia Mansaray is an epidemiologist who has worked for Ottawa County[1] for 15 years. (Tr. II, ECF No. 42, PageID.1020). In that role, Mansaray works often with schools because people tend to congregate there, spreading disease. (*Id.*, PageID.1022). Each school has a designated contact person who communicates with the County's Health Department. (*Id.*, PageID.1025). Libertas's delegate is an employee named Chris Veenstra. (*Id.*) Mansaray testified that Veenstra would have been given information about COVID-related reopening requirements for schools in summer 2020. (*Id.*)

Mansaray testified that during the pandemic, her office was not tasked primarily with pro-active enforcement of COVID-restriction violations. (*Id.*, PageID.1043). Rather, Mansaray and her staff took enforcement action only when they received a complaint. (*Id.*) Complaints about schools are directed to Mansaray. (*Id.*, PageID.1031). Mansaray had her first contact with Davis on September 4, 2020 (*id.*, PageID.1032) after receiving an anonymous complaint about a lack of masking at Libertas. (*Id.*, PageID.1033). Mansaray and Davis discussed the lack of masking, distancing, and the mixing of different cohorts of students taking place at Libertas. (*Id.*, PageID.1037). Davis testified he recalled during the conversation that he did not indicate Libertas would be making any changes to its lack of compliance and confirmed that Libertas in fact did not change its behavior as a result of Mansaray's call. (ECF No 41, PageID.977, 986, 988).

Mansaray followed up with an email a few weeks later reminding Davis of Libertas's obligation to enforce masking and social distancing at the school. (*Id.*, PageID.986–88). Davis never responded. (*Id.*) However, Mansaray continued to field complaints about the lack of masking and distancing at Libertas. (Tr. II, PageID.1045–47). Libertas's lack of cooperation is what ultimately

---

[1] Mansaray and the County of Ottawa are referred to collectively as "the Ottawa Defendants" hereafter. Libertas sued Mansaray in her personal and official capacity. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hardin v. Straub*, 954 F.2d 1193, 1198–99 (6th Cir. 1992) (quoting *Ky. v. Graham*, 473 U.S. 159, 165 (1985)).

led to the cease-and-desist orders and other actions, with which this Court is well acquainted. (ECF No. 30, PageID.499–508).

Mansaray received complaints about other schools. One complaint concerned a school called First Edition, a religious cooperative of homeschool families that met once per week in person. (Tr. II, PageID.1039). The caller complained that First Edition was not enforcing masking requirements or practicing social distancing. (*Id*.) Mansaray called First Edition. (*Id*., PageID.1039). First Edition was confused as to which requirement applied to it, and so Mansaray explained. (*Id*., PageID.1040). First Edition agreed that it would require masks and observe social distancing to the extent possible when meeting in person. (*Id*., PageID.1041). First Edition asked about chapel services, and Mansaray confirmed that chapel could be held as long as masking and social distancing were enforced, to which First Edition agreed. (*Id*., PageID.1041). Mansaray received no other complaints about First Edition. (*Id*., PageID.1042).

Mansaray also received a complaint about improper masking and lack of enforcement at Spring Lake public schools. (*Id*.) County staff contacted the superintendent, explained the requirements, and resolved the issue. (*Id*., PageID.1043). To the best of Mansaray's knowledge, as of October 2020, Libertas was the only school in the county *not* following COVID-restrictions applicable to K-12 schools. (*Id*.) However, after this lawsuit was initiated, Zeeland public schools agreed to voluntarily close because of an outbreak on campus. (*Id*., PageID.1057).

Both Mansaray and the head of the OCDPH, Lisa Stefanvosky, testified that they harbor no animus toward Christians in general or Libertas in particular. (*Id*., PageID.1045, 1181). Libertas withdrew its religious animus claim at the preliminary injunction hearing. (Tr. III, ECF No. 43, PageID.1243).

## ARGUMENT

### I.    Standards of Review

A motion for judgment on the pleadings under Fed R. Civ. P. 12(c) is evaluated under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *JPMorganChase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The Court must therefore "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)), but "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms Inc.*, 604 F.3d 272, 276 (6th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). "If a court . . . consider[s] material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion." *Rondigo L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011).

A motion for summary judgment tests the evidence and allows the court to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Martin v. Cincinnati Gas & Elec.*

*Co.*, 561 F.3d 439, 443 (6th Cir. 2009). Even so, a mere "scintilla of evidence" to support a non-movant's position will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The movant is only required to point out those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If no reasonable jury could return a verdict for the non-moving party, the court must enter judgment in favor of the movant. *Anderson*, 477 U.S. at 252.

## II.  Libertas's Constitutional Claims Against Mansaray and the County Are Ripe for Review.

In its order denying Libertas's motion for a preliminary injunction (ECF No. 30), this Court prudently abstained from considering the likelihood of Libertas's success on the merits of its federal constitutional claims against the Ottawa Defendants. The Court abstained under *Pullman* because (1) at the time of its Order, Libertas was indefinitely closed due to its failure to cooperate with the Ottawa Defendants' health enforcement, (2) the State Defendants had not yet been served, and (3) resolution of Libertas's claim that a Michigan statute violates the *Michigan* Constitution by a state court might obviate the need for this Court's consideration of the *federal* constitutional claims. Since then, however, circumstances have changed, and this Court should address the federal constitutional claims against the Ottawa Defendants on the merits.

Libertas's state law claim is that Mich. Comp. Laws § 333.2253—under which Defendant Gordon issued COVID-related public health orders—violates the separation of powers provision of the Michigan Constitution. Consequently, Libertas asserts, the State Defendants violated Libertas's and its parents' *federal* constitutional rights by promulgating the public health orders that required masking and social distancing. This Court correctly determined that whether the statute is compatible with the Michigan Constitution is an issue the courts of Michigan must decide in the

6

first instance, and it therefore abstained from addressing the federal constitutional claims.

Libertas also alleged in its Complaint[2]—and confirmed through the testimony of Williams and Davis—that the constitutional injuries it and its parents suffered because of the Ottawa Defendants are distinct from its state law claims. Put simply, Libertas claims the federal constitutional rights of it, its parents, and its students to the Free Exercise of Religion, Association, and Family Integrity were violated when the Ottawa Defendants gave it an ultimatum to enforce mask-wearing and practice social distancing or go back to virtual learning.

Libertas sued the Ottawa Defendants under 42 U.S.C. § 1983, which imposes liability when a person acting "under color of law" causes a deprivation of a constitutional right. *Hardin*, 954 F.2d at 1198–99. When a § 1983 defendant is a government employee, "acting under color of law" often means the defendant is acting within the scope of her authority, delegated to her by statute, ordinance, or policy. But acting under color of law *also* includes an *abuse* of duly granted authority. *West v. Atkins,* 487 U.S. 42, 49–50, 108 S. Ct. 2250, 101 L. Ed. 2d 4664 (1988). Even if a Michigan court holds that Mich. Comp. Laws § 333.2253 violates the Michigan constitution—such that the Ottawa Defendants lacked official authorization to impose masking and social distancing—the Ottawa Defendants still will have taken actions under color of law that Libertas alleges violated its constitutional rights.

"Abstention does not . . . involve abdication of federal jurisdiction, but only postponement of its exercise . . . ." *Gottfried v. Med. Planning Servs. Inc.*, 142 F.3d 326, 332–33 (6th Cir. 1998) (quoting *England v. Louisiana Bd. of Med. Examiners*, 375 U.S. 411, 416, 84 S. Ct. 461, 11 L. Ed. 2d 440 (1964)). Libertas began operating with in-person instruction again in January 2021, having acceded to the Ottawa Defendants' demands that it enforce mask wearing and social distancing.

---

[2] Compl. ¶¶ 39–47, 52, 55, 60–61, 72, 77.

(**Exhibit 1**, Libertas Newsletter). Under threat of enforcement action from the Ottawa Defendants, Libertas continued to meet in person for the remainder of the 2020–21 school year, requiring masks and social distancing. Regardless of whether Mich. Comp. Laws § 333.2253 survives a state court challenge, Libertas's federal constitutional claims against the Ottawa Defendants are ripe for review and dismissal.

### III. Libertas's Constitutional Claims Against the Ottawa Defendants Do Not Survive the Deferential *Jacobson* Standard.

The Supreme Court "has distinctly recognized the authority [under the general police power] to enact . . . health laws of every description." *Jacobson v. Mass.*, 197 U.S. 11, 24–25, 25 S. Ct. 358, 49 L. Ed. 643 (1905). In *Jacobson*, the plaintiff argued that a health law that compelled him to get a smallpox vaccination (during a smallpox epidemic) or face a fine violated his constitutional right to Liberty under the Fourteenth Amendment. *Id.* at 25. The Supreme Court rejected his claim, reasoning that an individual's constitutional rights—even the right to Liberty—cannot be exercised such that a person is a law unto himself with no regard for how his exercise of liberty will impact others:

> This court has more than once recognized it as a fundamental principle that persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State; of the perfect right of the legislature to do which no question ever was, or upon acknowledged general principles ever can be made, so far as natural persons are concerned.
>
> \*     \*     \*
>
> The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. *Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will*. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law.

*Id.* at 26–27 (emphasis added) (quotations omitted).

As this Court recognized (in a case reversed on other grounds), "The Sixth Circuit has confirmed that *Jacobson* is the proper starting point for evaluating restrictions promulgated in

response to [the COVID-19] pandemic that touch upon constitutional rights." *League of Indep. Fitness Facilities & Trainers Inc. v. Whitmer*, 468 F. Supp. 3d 940, 948 (W.D. Mich. 2020) (Maloney, J.) *rev'd* 814 F. App'x 125 (6th Cir. 2020). As Chief Justice Roberts reasoned, "The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." *S. Bay United Pentecostal Church v. Newsom*, ___ U.S. ___, 140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J.). When state and local health officials enact regulations under the *Jacobson* framework "they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id*.

Thus, this Court cannot "second guess" state action taken in response to the pandemic unless it is "completely baseless." *CH Royal Oak LLC v. Whitmer*, 472 F. Supp. 3d 410, 418 (W.D. Mich. 2020) (Maloney, J.). "As the Supreme Court and the Sixth Circuit Court have made clear, the protections guaranteed by the federal constitution are not absolute. Individual constitutional rights are malleable under these emergency circumstances." *Id*. at 419. This Court must therefore uphold pandemic-related restrictions that impact constitutional rights "so long as there exists rational speculation that offers conceivable support to" the restriction. *Id*.

Here, it takes only a moment of rational speculation to discover conceivable support for the Ottawa Defendants to require Libertas to enforce masking and social distancing if it wishes to continue in-person learning. As of May 15, 2021, the Centers for Disease Control and Prevention still recommends that "All schools should implement and layer prevention strategies and should prioritize universal and correct use of masks and physical distancing."[3] Therefore, there is rational support for the Ottawa Defendants' requirement that Libertas enforce masking and social

---

[3]   CDC, *Operational Strategy for K-12 Schools through Phased Prevention*, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/operation-strategy.html.

distancing mandates under the *Jacobson* standard as presently interpreted by the Sixth Circuit in the context of the present pandemic. All of Libertas's constitutional pleadings fail under this standard, and the Court should grant judgment on the pleadings in favor of the Ottawa Defendants under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(c).

IV.    **Libertas's Free Exercise Rights Were Not Violated Because During a Pandemic Masking and Social Distancing Requirements Are Neutral Regulations of General Applicability and Libertas's Objections to These Requirements Are Not Motivated by a Sincere Religious Belief.**

As the State Defendants correctly point out, although Libertas designated its Free Exercise claim as Count III, its federal constitutional claims are contingent on a successful Free Exercise claim. The Ottawa Defendants, therefore, likewise address this claim first.

A.    **The County's Consistent, Complaint-Based Enforcement of Masking and Social Distancing at K-12 Public, Private, Secular, and Religious Schools Is Neutral and Generally Applicable.**

The First Amendment to the United States Constitution, made applicable to the States and their political subdivisions by the Fourteenth Amendment, forbids state action that prohibits the Free Exercise of Religion. *Prater v. City of Burnside*, 289 F.3d 417, 427 (6th Cir. 2002) (citing *Cantwell v. Conn.*, 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940); *McDaniel v. Paty*, 435 U.S. 618, 620, 98 S. Ct. 1322, 55 L. Ed. 2d 593 (1978)). "[A] litigant suffers an injury to her free exercise rights when the state compels her to do or refrain from doing an act forbidden or required by her religion." *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (internal quotation omitted). Nevertheless, religiously neutral and generally applicable state action that incidentally burdens religious conduct does not violate the Free Exercise Clause. *Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020) (order) (per curiam) (citing *Emp. Div. Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878–79, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990)).

Moreover, the Free Exercise Clause "does not entitle a religious organization to special

benefits." *Prater*, 289 F.3d at 427–30. Therefore, where a religious organization "seeks preferential, not equal, treatment" it cannot "moor its request for accommodation to the Free Exercise Clause." *Christian Legal Soc. Chapter v. Martinez*, 561 U.S. 661, 697 n.27, 130 S. Ct. 2971, 177 L. Ed. 2d 838 (2010).

Neutrality, in this context, is not the absence of religious bigotry. *Roberts*, 958 F.3d at 415. Rather, to be neutral, state action must not discriminate against religious conduct on its face. *Id*. The touchstone of Free Exercise analysis is whether the challenged state action "imposes special disabilities because of religious status." *Trinity Lutheran Church of Columbia Inc. v. Comer*, ___ U.S. ___, 137 S. Ct. 2012, 2020–21, 198 L. Ed. 2d 551 (2017) (cleaned up). Such discrimination can take various forms, such as action motived animus toward people of faith in general or one faith in particular; the singling out of religious activity for regulation; or allowing exceptions for *comparable* secular activity to a facially generally applicable regulation. *Roberts*, 958 F.3d at 413.

Libertas alleged in its Complaint that Mansaray demonstrated religious animus because of the "terse exchanges leading to the Cease-and-Desist Order" (Compl. ¶ 73) and because Mansaray mentioned the mixing of different cohorts of students in "chapel" and "morning worship services." (*Id*. ¶¶ 75, 76). In the next paragraph, Libertas all but concedes that this gathering restriction is a neutral ban on "indoor assemblies that bring together students from more than one classroom." (*Id*. ¶ 77). Nonetheless, Libertas complains that no "carve out" is made for religious assemblies of students.

But religious discrimination cannot be inferred "simply because a public program is incompatible with a religious organization's spiritual priorities." *Prater*, 289 F.3d at 428:

> The Free Exercise Clause does not offer to reconcile the various competing demands on government, many of them rooted in sincere religious belief, that inevitably arise in so diverse a society as ours. . . . [G]overnment acts often inadvertently frustrate certain citizens' search for spiritual fulfillment, yet the government simply

could not operate if it were required to satisfy every citizen's religious needs and desires.

*Id*. at 428–29 (internal quotations omitted). Thus, just because Libertas would like to gather all its students for worship does not mean that neutral state action prohibiting such a gathering demonstrates religious discrimination. *Trinity Lutheran*, 137 S. Ct. at 2020–21.

Even assuming that Libertas's objection to requiring masking and social distancing is motivated by a sincere religious belief—a point the Ottawa Defendants do not concede—the enforcement and mitigation actions Ottawa has taken with respect to comparable secular and religious institutions demonstrates that its response to COVID-19 is religiously neutral and generally applicable. *See Kentucky ex rel. Danville Christian Acad. Inc. v. Beshear*, 981 F.3d 505, 508–11 (6th Cir. 2020) (holding that restrictions on in-person learning imposed on religious elementary and secondary school should be compared to statewide restrictions on in-person learning at "K-12 schools"—and not other types of gatherings or businesses—and that such restrictions were neutral and generally applicable); *see also Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 701 (10th Cir. 1998) (concluding that the Free Exercise Clause did not entitle children who were home-schooled for religious reasons to attend public school on a part-time basis when other home-schooled children were precluded from doing so); *Vandiver v. Hardin Cnty. Bd. of Educ.*, 925 F.2d 927, 934 (6th Cir. 1991) (holding that the plaintiff could not sustain a Free Exercise challenge to a policy requiring students transferring to public school to pass a test before receiving credit for courses studied at home "[a]bsent evidence that similarly situated transferees from nonreligious home schools were provided an 'exemption' which [the plaintiff] was not . . .").

On the pleadings, therefore, Libertas has failed to allege that Ottawa's masking and social distancing mandates are anything other than neutral laws of general applicability. Indeed, the Complaint is devoid of allegations that the Ottawa Defendants either singled out Libertas for

enforcement in the absence of a complaint or ignored complaints about lack of masking or social distancing at comparable secular schools. Under *Smith*, the Court must therefore dismiss the complaint.

Moreover, Libertas has conceded that the Ottawa Defendants are not motivated by religious animus. There is also no evidence the Ottawa Defendants singled out religious activity for COVID restrictions or gave exceptions for comparable secular activity. Rather, the record shows that the Ottawa Defendants treated Libertas the *same* as comparable institutions—that is, public or private secular and religious educational institutions.

The County received complaints about improper masking at Spring Lake public schools. It contacted the school, made sure the administration understood what was required, and received no further complaints. When it received complaints that another religious school, First Edition, was not enforcing masking, the County likewise contacted the school. Mansaray testified she worked through options with the administration and ensured that the school could continue to hold chapel services while enforcing masking and social distancing.

Mansaray has not treated Libertas differently than any other K-12 school about which it received complaints of non-compliance with COVID restrictions. Mansaray testified that the only difference between her interactions with Libertas and other schools was Libertas's lack of cooperation. Mansaray's interaction with Spring Lake and First Edition over lack of compliance with masking and social distancing began the same way as her interaction with Libertas: with a complaint. In these cases, Mansaray received assurances from the administrators to whom she spoke that the schools would begin to comply. Davis, on the other hand, testified he told Mansaray Libertas would *not* comply. Even then, Mansaray did not take further action. It was only after she received additional complaints about Libertas that the County began to take "enhanced"

enforcement action. And it was only after Libertas's intransigence became apparent that the cease-and-desist letters and closure orders were issued.

There is no evidence in the record that Libertas was treated differently than any other educational institution in the county because of its religious beliefs or affiliation, Therefore, Ottawa Defendants' policy of enforcing masking and social distancing at local K-12 schools is a neutral and generally applicable regulation. Although this policy is allegedly an incidental burden to religion, under *Smith* the Ottawa Defendants have not violated Libertas's Free Exercise rights, and the Court should grant summary judgment in their favor under Rule 56, as well as Fed. R. Civ. P. 12(b)(6) or 12(c).

**B.     Libertas's Admissions Foreclose a Reasonable Jury from Finding that Their Objection to Masking and Social Distancing Is Motivated by a Sincere Religious Belief.**

If state action is *not* religiously neutral and generally applicable, it must survive strict scrutiny. *Trinity Lutheran*, 137 S. Ct. at 2019. That is, the Ottawa Defendants' requirement that students and staff at Libertas wear face masks and socially distance to the extent possible must be the least restrictive means of achieving a compelling government interest. *Roberts*, 958 F.3d at 413. Before evaluating the challenged state action, a threshold question is whether "the conduct at issue is an exercise of religion." *Doe v. Cong. of the United States*, 891 F.3d 578, 586 (6th Cir. 2018).

It is *not* for this Court to decide whether a plaintiff's religious beliefs are reasonable, mistaken, or insubstantial. *Id*. at 586–87. Rather, the Court's function is to "'determine whether the line drawn' by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs 'reflects an honest conviction.'" *Id*. (quoting *Burwell v. Hobby Lobby Stores Inc.*, 573 U.S. 682, 686, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014)). Participation in, or abstention from, the conduct at issue must be motivated by a religious belief "and not merely a personal, non-religious belief." *Id*. at 587 (citing *Holt v. Hobbs*, 574 U.S. 352, 360–61, 135 S. Ct. 853, 190 L. Ed. 2d 747

14

(2015)). A Free Exercise claim must be based on "a religious belief rather than a philosophy or way of life." *Gen. Conf. Corp.  Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010). Once a plaintiff has established a sincere religious belief, he or she must also show that the conduct at issue is actually incompatible with that belief. *Doe*, 891 F.3d at 587.

Libertas generally alleges that it is "a faith-based, Christian association, and openly so" (Compl. ¶ 70) and that "Libertas partners with parents to employ a classical and biblical educational program, which is motivated to the fullest extent possible by the sincerely held Christian religious beliefs of Libertas, its parents, teachers, and students." (*Id*. ¶ 71). A careful reading of the remainder of the Complaint, however, reveals that Libertas failed to identify any religious belief that would be violated if it required its students to mask and socially distance. Based on this failure alone, the Ottawa Defendants are entitled to judgment on the pleadings with respect to Count III.

Should the Court consider the record, it must conclude that Libertas's objections to masking and social distancing are grounded in personal, philosophical, or other non-religious beliefs. Williams testified that Libertas would not object to parents sending their children to school in masks voluntarily. (Tr. I, PageID.918). Williams further testified that masking did not violate any religious tenets. (*Id*., PagedID.920–21). Libertas's Parent-Student Handbook states, "As a Christian institution, our concern is for the spiritual growth and behavior of each student. Our expectation for each student is to have his or her conduct reflect the teaching of God's Word." (**Exhibit 2**, Libertas Handbook). It defies logic to suggest that Libertas would condone conduct among its students—namely, masking—while at school that conflicts with the religious beliefs of the school or its parents when its stated "expectation" is that each student's conduct will "reflect the teaching of God's word."

When asked to identify a *religious* ground for objecting to masking and social distancing,

15

Williams failed to do so. (Tr. I, PageID.894–97). Rather, he identified some practical difficulties masking or distancing would create for Libertas's teaching methods—namely, recitation and Socratic questioning—but such reasoning was never connected to its religious beliefs. (*Id*., PageID.896).

Headmaster Robert Davis put Libertas's decisions not to comply with the public health mandates in starker terms: the decision was about money, not religion. Davis testified that over the summer the "unanimous" results of a survey of parents was that they did not want Libertas to enforce masking or social distancing. (*Id*, PageID.953). Davis testified this put him in a "dilemma" because he feared that if Libertas decided to enforce masking, a substantial number of tuition-paying parents would abandon the school. (*Id*.) This lack of tuition dollars would, in Davis's estimation, jeopardize the school's existence. (*Id*.) Davis testified that Libertas therefore deferred the decision on masking and social distancing to the parents. (*Id*.) He explained that it is the parents:

> who create the school in the first place . . . our tuition-paying parents create the school. *They are the customers*, so as *any business* would want to do, I wanted to *provide the service that our customers desired*.

(*Id*., PageID.954) (emphasis added).

This pecuniary—rather than religious—motivation for refusing to comply with the Ottawa Defendants' requirements for masking and social distancing is the only motivation that finds support in the record. Indeed, Davis offered no explanation, religious or otherwise, as to what motivated the parents of Libertas's students to "unanimously" reject masking and social distancing. Libertas has failed to demonstrate that masking and social distancing is actually incompatible with any of its sincerely held religious beliefs. *Doe*, 891 F.3d at 587. Therefore, even if the Ottawa Defendants' actions are subject to strict scrutiny, this Court must still enter summary judgment in their favor.

**C.      Requiring K-12 Students to Mask and Socially Distance Is the Least Restrictive Means of Achieving the Ottawa Defendants' Compelling Interest in Stopping the Spread of COVID-19.**

Even if Libertas's objection to masking and social distancing was motivated by a sincerely held religious belief, requiring students at K-12 schools to mask and socially distance is the least restrictive means of achieving the Ottawa Defendants' compelling interest of fighting the COVID-19 pandemic.

As the United States Supreme Court itself has found, "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, ___ U.S. ___, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020); *see also Newsom*, 141 S. Ct. 716 ("No one before us disputes that factors [discussed above] may increase the risk of transmitting COVID-19. And no one need doubt that the State has a compelling interest in reducing that risk").

To the Ottawa Defendants' knowledge, Libertas is the only religious organization in the country to have litigated whether a mask mandate is the "least restrictive means" of achieving the compelling governmental interest of "[s]temming the spread of COVID-19." Cases that have reached the appellate level have dealt with limitations on the sizes of gatherings of religious worshippers who do not contend that masking or social distancing interferes with their exercise of religion. *See, e.g., Roman Catholic Diocese*, 141 S. Ct. 63; *Agudath Isr. of Am. v. Cuomo*, 980 F.3d 222 (2d Cir. 2020).

To meet the least restrictive means test, the government must show "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion." *Little Sisters of the Poor Saints Peter & Paul Home v. Penn.*, ___ U.S. ___, 140 S. Ct. 2367, 2394, 207 L. Ed. 2d 819 (2020). In *Burwell*, the Court noted that if providing cost-free contraception was a compelling government interest, Congress could achieve its goal by paying for the contraception directly, rather than forcing objecting religious employers to fund it indirectly

through insurance premiums. *Burwell*, 573 U.S. at 728. "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt*, 574 U.S. at 365.

The Ottawa Defendants can substantially burden Libertas's religious expression to combat the spread of COVID-19 without violating its Free Exercise rights because it has a compelling interest in doing so, so long as that burden is the least restrictive means of achieving that goal. If Libertas wants its students to meet in person during the pandemic,[4] it is difficult to conceive of a less intrusive requirement than wearing a piece of cloth over one's face and staying a far apart as practicable while on campus. Because the Ottawa Defendants' masking and social distancing requirements meet strict scrutiny, the Court must dismiss Count III on the pleadings or, alternatively, grant summary judgment on Count III in their favor.

## V.    Libertas's Remaining Constitutional Claims Fail Because They Are Contingent on a Successful Free Exercise Claim.

Counts I, II, and V of Libertas's Complaint allege that through its orders requiring masking and social distancing, the Ottawa Defendants violated its constitutional rights to Free Association, Family Integrity/Education, and Procedural Due Process. These claims are derivative of and dependent on Libertas's claim that the Ottawa Defendants violated its right to the Free Exercise of Religion. To the extent Counts I, II, and V rely on this theory of liability, they likewise fail. Moreover, the allegations of the Complaint and the record evidence demonstrate that no genuine issue of material fact exists as to whether, independent of a Free Exercise claim, these additional constitutional rights were violated. This Court should also, therefore, grant judgment on the pleadings or, alternatively, enter summary judgment in favor of the Ottawa Defendants on Counts I, II, and V.[5]

---

[4] To reiterate, Libertas admitted that virtual learning did not violate its religious beliefs.
[5] The Ottawa Defendants incorporate by reference the State Defendants' arguments that Count IV should be dismissed because the State Defendants possess Eleventh Amendment Immunity from the claims

A.    **The Ottawa Defendants Have Not Unconstitutionally Interfered with the Parents of Libertas's Students Right to Association with One Another or with Libertas for a Religious Purpose.**

The Supreme Court "has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Akers v. McGinnis*, 352 F.3d 1030, 1035–36 (6th Cir. 2003) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)).

> But the freedom of expressive association, like many freedoms, is not absolute. We have held that the freedom could be overridden "by regulations adopted to serve compelling state interests, *unrelated to the suppression of ideas*, that cannot be achieved through means significantly less restrictive of associational freedoms."

*Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000) (quoting *Jaycees*, 468 U.S. at 623) (emphasis added).

Interference with the right to association can take many forms, including imposing penalties or withholding benefits *because of membership in a disfavored group*, requiring "the disclosure of the fact of membership in a group seeking anonymity," or interference with the internal organization of the group. *Jaycees*, 468 U.S. at 622–23. The Sixth Circuit employs a three-part test to evaluate whether a group's right to associate has been violated: (1) whether the group engages in activity that could be impaired; (2) whether "the challenged government action *significantly burdens* the group's expression"; and (3) whether the government's interest in any restriction outweighs the group's right to expressive association. *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. Educ.*, 822 F.3d 831, 840 (6th Cir. 2016) (emphasis added).

---

set forth in Count IV and that they are also necessary parties under Fed. R. Civ. P. 19. (ECF No. 38, PageID.600–01). Count IV must be dismissed with respect to the Ottawa Defendants in any event because, as a political subdivision of the State, the County is not the proper party for a claim that a state statute is unconstitutional.

A "significant burden" requires government action that "directly or indirectly interferes with group membership" or that hinders a group's expression as a result of an interference with the group's membership. *Id*. "A group claiming infringement of its right to expressive association may not rely on generalizations to show a burden on its expression, but rather must support that claim of burden by evidence in the record." *Id*. Nowhere does Libertas allege that the Ottawa Defendants prevented it from accepting or rejecting members in accordance with its religious purpose. Because Libertas does not allege that the Ottawa Defendants interfered with its membership, its Free Association claim fails as a matter of law, and the Court must enter judgment on the pleadings in the Ottawa Defendants' favor.

Moreover, there is no record evidence that the Ottawa Defendants' enforcement of masking and social distancing requirements interfered with Libertas's membership. Davis testified he feared if he enforced masking, Libertas would face a mass exodus that would force it to close. But after Libertas reopening with a universal masking policy in place, the majority of families remained. (Ex. 1, Libertas Newsletter). There is no evidence in the record that the Ottawa Defendants did anything to force Libertas to accept members it does not want or exclude members it did want. There is no genuine issue of fact that Libertas's and its parents' right to associate was not significantly burdened. The masking and social distancing requirements—which merely place conditions on the safety precautions that must be observed when people congregate at Libertas in person—interfere with Libertas's rights to associate no more than a fire or building code, which is unquestionably constitutional.

Finally, the masking and social distancing requirements imposed by the Ottawa Defendants on Libertas and its parents meet strict scrutiny for the same reasons discussed in Section IV(C) above. Therefore, the Court must grant summary judgment in the Ottawa Defendants' favor with

respect to Count I.

**B.    The Ottawa Defendants Have Not Unconstitutionally Interfered with the Libertas Parents' Right to Direct the Upbringing of Their Children.**

The Supreme Court has long recognized the right of parents to direct the upbringing of their childing, including the right to give them religious training. *Prince v. Mass.*, 321 U.S. 158, 165, 64 S. Ct. 438, 88 L. Ed. 645 (1944). "But the family itself is not beyond regulation in the public interest, as against a claim of religious liberty." *Id.* at 166. This is particularly true with respect to public health, where the "right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Id.* at 166–67. The government may go so far as to compel vaccination of a child over a parent's religious objection, a step far more intrusive than requiring a mask or social distancing while the child receives religious instruction. *Id.*

Nonetheless, the Supreme Court and the Sixth Circuit have "repeatedly recognized that parents have a fundamental right to raise their children, including directing their children's education." *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 972 (6th Cir. 2004). This includes the right to choose private schools over public. *Id.* But parents "have no constitutional right to provide their children with private school education unfettered by reasonable government regulation." *Runyon v. McCrary*, 427 U.S. 160, 178, 96 S. Ct. 2586, 49 L. Ed. 2d 415 (1976). Therefore, a challenge to state action that impacts parents' ability to direct their children's education is subject to rational-basis review, unless the challenge is coupled with a Free Exercise claim, in which case strict scrutiny applies. *Ohio Ass'n Independent Schs. v. Goff*, 92 F.3d 419, 422–23 (6th Cir. 1996).

As discussed above, Libertas's Free Exercise claim fails as a matter of law, so strict scrutiny does not apply. Even if strict scrutiny did apply, requiring masking and social distancing for in-person instruction is the least restrictive means of achieving the compelling governmental interest

of stemming the spread of COVID-19. State action that survives strict scrutiny must, by definition, survive rational basis review.[6] The Ottawa Defendants are therefore entitled to judgment on the pleadings or, alternatively, summary judgment on Count II of Libertas's Complaint.

### C.    Libertas Was Given Adequate Procedural Due Process to Protect Its Constitutional Rights.

The gravamen of Count V with respect to the Ottawa Defendants is that by issuing the cease-and-desist orders and forcing Libertas to choose between complying with the masking and social distancing requirements or closing the school, the Ottawa Defendants denied Libertas procedural due process. Libertas gives two reasons in support of this conclusion: (1) the requirements are unconstitutional, and Libertas was not given a chance to argue such; and (2) the requirements do not apply to Libertas, and it was not given a hearing to challenge the requirements' applicability. (Compl. ¶ 111). Libertas's theory of liability under the Due Process Clause conflates the constitutional deprivations it alleges it suffered with the process it was afforded in the course of those alleged deprivations.

The Due Process Clause provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Am. XIV. The Clause presumes that, relevant here, deprivations of liberty at the hands of the state can and will take place. Therefore, even if Libertas's claims to First Amendment deprivations had merit, it would not automatically follow that the Ottawa Defendants violated due process.

"At its essence, due process can be summarized as 'the requirement that a person . . . be given notice of the case against him and [an] opportunity to meet it.'" *Shoemaker v. City of Howell*,

---

[6] Under rational-basis review, "plaintiffs bear the heavy burden of 'negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record.'" *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000) (quoting *Heller v. Doe*, 509 U.S. 312, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)) (alterations in original).

795 F.3d 553, 559 (6th Cir. 2015) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348–49, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). Here, there is no dispute that prior to issuing the cease-and-desist orders, Mansaray contacted Libertas by phone and by email, through Davis, in September 2020 to inform him of the complaints regarding masking and distancing. (Compl. ¶¶ 74–76; *see also* Tr. I, PageID.977–78). Davis further testified that while speaking with Mansaray, he had an opportunity to explain to her his position that he did not believe the State's "Return to School Roadmap" required schools to enforce masking and social distancing. (*Id.*, PageID.983). Davis received the first cease-and-desist order on October 15, 2020 (a Thursday). (*Id.*, PageID.989). On October 18, 2020 (a Sunday), Libertas filed its Complaint in this case. (ECF No. 1).

At minimum, Libertas was given "predeprivation" notice of its violations of the COVID-19 restrictions and an informal opportunity to object to the application of those restrictions to its operations. Davis admitted that throughout September and into October, Libertas never attempted formally or informally to challenge the application of COVID restrictions to Libertas by the Ottawa Defendants. When the first cease-and-desist order was issued—and before the school was closed—Libertas filed this lawsuit instead of seeking a hearing with the County.

"[T]he requirements of due process are fluid and fact dependent." *Shoemaker*, 795 F.3d at 559. Courts use a four-factor test to determine if due process is satisfied:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation[;] . . . [3] the probable value, if any, of additional or substitute procedural safeguards; and [4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 559 (quoting *Mathews*, 424 U.S. at 335). Moreover, pre- and post-deprivation procedures must be considered together. *Leary v. Daeschner*, 228 F.3d 729, 742–43 (6th Cir.2000). If elaborate post-deprivation procedures are in place, such as the ability to vindicate rights in court, less elaborate pre-deprivation procedures—or no pre-deprivation procedures at all—may be required. *Id.*

23

Libertas was given actual notice of its violations of the County's COVID-19 restrictions and failed to take any action to inform the County of its objections to the constitutionality or applicability of those requirements. Libertas "should not be able to now use [its] inaction against the [County] in claiming a violation of due process." *Shoemaker*, 795 F.3d at 560. Moreover, the "post-deprivation" review available to Libertas—a lawsuit in federal court—is more than sufficient to vindicate any rights of which it was deprived.

Further, consideration of the *Mathews* factors shows that the process afforded Libertas is sufficient. Although important liberty interests are at stake (Factor 1), the risk of erroneous deprivation is low (Factor 2). Specifically, whether students are masking and social distancing at Libertas is easy to verify and difficult to mistake. *See id.* at 561 ("Due to this objective, readily ascertainable standard, there is little chance of a wrongful application of the law."). Given this low risk or erroneous deprivation, additional safeguards would have been of little use (Factor 3), and an undue administrative burden given the compelling exigency of controlling the COVID-19 pandemic (Factor 4). *Roman Catholic Diocese*, 141 S. Ct. 63 (2020); *see also Newsom*, 141 S. Ct. 716 (2021).

Libertas's Procedural Due Process claim against the Ottawa Defendants fails as a matter of law, and the Court should grant judgment on the pleadings or, alternatively, summary judgment in the Ottawa Defendants' favor.

## CONCLUSION[7]

In the midst of an historically fraught moment in our nation's history, Libertas chose to

---

[7] If this Court converts this motion into one for summary judgment by considering the record outside the pleadings, it must give Libertas "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Court is not, however, required to permit discovery. In fact, it would be error to permit any discovery because, in light Libertas's own admissions, the Ottawa Defendants are entitled to judgment as a matter of law, and any discovery would therefore be fruitless. *See Helena Agri-Enters. LLC v. Great Lakes Grain LLC*, 988 F.3d 260, 273 (6th Cir. 2021); *King v. Harwood*,

make its stand by refusing to comply with one of the most effective strategies for containing the spread of COVID-19[8] while continuing in-person education. Libertas attempted to moor its defiance to the freedoms protected by the First Amendment. Libertas has failed, however, to create a genuine fact issue as to whether any of its constitutional rights were violated. Indeed, Libertas all but admitted that its defiance was not based on a sincere religious belief at all. For these reasons, the Court must grant summary judgment in favor of the Ottawa Defendants.

SILVER & VAN ESSEN, P.C.
Attorneys for Ottawa County Defendants

Date: June 25, 2021                    By: /s/ *Douglas W. Van Essen*
                                           Douglas W. Van Essen (P33169)

                                       BUSINESS ADDRESS AND TELEPHONE:
                                           300 Ottawa Avenue, NW, Suite 620
                                           Grand Rapids, MI 49503
                                           (616) 988-5600
                                           dwv@silvervanessen.com

---

852 F.3d 568, 579 (6th Cir. 2017); *Strehlke v. Grosse Pointe Pub. Sch. Sys.*, 654 F. App'x 713, 718–19 (6th Cir. 2016); *Abercrombie & Fitch Stores Inc. v. Am. Eagle Outfitters Inc.*, 280 F.3d 619, 627–28 (6th Cir. 2002).

[8] Herstein, J. J., Degarege, A., Stover, D., Austin, C., Schwedhelm, M. M., Lawler, J. V. Donahue, M. (2021). Characteristics of SARS-CoV-2 Transmission among Meat Processing Workers in Nebraska, USA, and Effectiveness of Risk Mitigation Measures. *Emerging Infectious Diseases*, *27*(4), 1032-1038. https://doi.org/10.3201/eid2704.204800.