UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

| | |
|---|---|
| LIBERTAS CLASSICAL ASSOCIATION,<br><br>    Plaintiff,<br><br>v.<br><br>GRETCHEN WHITMER, individually and in her official capacity as Governor of the State of Michigan; DANA NESSEL, individually and in her official capacity as Attorney General of the State of Michigan; ROBERT GORDON, individually and in his official capacity as Director of the Michigan Department of Health and Human Services; and MARCIA MANSARAY, individually and in her official capacity as Deputy Health Administrator of the Ottawa County Department of Health,<br><br>    Defendants | Case No. 1:20-cv-997<br>Honorable Paul L. Maloney<br><br>**REPLY IN SUPPORT OF DEFENDANT MANSARAY'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT** |

| | |
|---|---|
| Ian A. Northon (P65082)<br>Adam J. Baginski (P83891)<br>RHOADES MCKEE PC<br>Attorneys for Plaintiff<br>55 Campau Ave NW, Suite 300<br>Grand Rapids, MI 49503<br>(616) 235-3500 | Douglas W. Van Essen (P33169)<br>SILVER & VAN ESSEN, P.C.<br>Attorney for Defendant Mansaray<br>300 Ottawa Avenue, NW, Suite 620<br>Grand Rapids, MI 49503<br>(616) 988-5600<br>dwv@silvervanessen.com<br><br>Daniel J. Ping (P81482)<br>John G. Fedynsky (P65232)<br>STATE OF MICHIGAN<br>Attorneys for Defendants Whitmer and Gordon<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7632<br>pingd@michigan.gov<br>fedynskyj@michigan.gov |

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.    This Motion Is Properly Before the Court. ............................................................. 1

    II.    The Orders at Issue Are Neutral and Generally Applicable........................................ 2

    III.    Libertas's Vague Assertion of Its Religious Beliefs Cannot Serve as the Basis of a Free Exercise Claim. ................................................................................................... 3

    IV.    Masking and Social Distancing Mandates Meet Strict Scrutiny. ................................. 6

    V.    Libertas Has Failed to State Claims for Violations of Its Rights to Freedom of Association or Family Integrity. ............................................................................. 7

    VI.    Libertas's Procedural Due Process Argument Confuses the Alleged Violation of Its Rights with the Process Afforded. ............................................................................. 8

CONCLUSION .................................................................................................................. 10

# INDEX OF AUTHORITIES

**Cases**

*Abercrombie & Fitch Stores Inc. v. Am. Eagle Outfitters Inc.*, 280 F.3d 619 (6th Cir. 2002) ......... 2

*Boy Scouts of Am. v. Dale*, 530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000) ................... 8

*Burwell v. Hobby Lobby Stores Inc.*, 573 U.S. 682, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) ... 3

*Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020) ............................................................. 3

*Emp. Div. Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) ................................................................................................. 4

*Gellington v. Christian Methodist Episcopal Church Inc.*, 203 F.3d 1299 (11th Cir. 2000) ......... 5

*Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ............................. 9

*Helena Agri-Enters. LLC v. Great Lakes Grain LLC*, 988 F.3d 260 (6th Cir. 2021) ..................... 1

*Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015) ................................... 3, 7

*JPMorganChase Bank N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007) ............................................ 1

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017) ............................................................................ 1

*New Doe Child #1 v. Congress of the United States*, 891 F.3d 578 (6th Cir. 2018) ...................... 5

*Nikolao v. Lyon*, 875 F.3d 310 (6th Cir. 2017) .............................................................................. 7

*Ohio Ass'n Indep. Schs. v. Goff*, 92 F.3d 419 (6th Cir. 1996) ........................................................ 8

*Resurrection Sch. v. Gordon*, 507 F. Supp. 3d 897 (W.D. Mich. 2020) .................................... 2, 3

*Reynolds v. United States*, 98 U.S. 145, 25 L. Ed. 244 (1878) ...................................................... 5

*Roberts v. Neance*, 958 F.3d 409 (6th Cir. 2020) ......................................................................... 2

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984) ....................... 8

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ............................................................. 5

*Strehlke v. Grosse Pointe Pub. Sch. Sys.*, 654 Fed. App'x 713, 718–19 (6th Cir. 2016) ................ 2

*Tchankpa v. Ascena Retail Grp. Inc.*, 951 F.3d 805 (6th Cir. 2020) .............................................. 8

*United States v. Acevedo-Delgado*, 167 F. Supp. 2d 477 (D.P.R. 2001) ....................................... 5

*United States v. Masel*, 54 F. Supp. 2d 903 (W.D. Wis. 1999) ..................................................... 5

*Warner v. Boca Raton*, 64 F. Supp. 2d 1272 (S.D. Fla. 1999) ...................................................... 5

*Wis. v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) ........................................... 4

**Other Authorities**

Judges 21:25 (English Standard Version) ...................................................................................... 6

**INTRODUCTION**

In its response brief, Libertas ignores the preliminary injunction proofs and seeks to perpetuate a campaign of defiance against presently nonexistent mandates of simple disease control among its students. For the reasons that follow, Libertas's legal arguments are unavailing, and this Court should enter judgment in the Ottawa Defendants' favor as a matter of law.

**ARGUMENT**

**I.      This Motion Is Properly Before the Court.**

Libertas argues that the Ottawa Defendants' motion under Rule 12(c) is improper because the State Defendants have not filed an answer and, therefore, the pleadings are not "closed." But this is a distinction without a difference. Regardless of whether the present motion is treated as one under Rule 12(b)(6) or Rule 12(c), this Court will apply the same standard. *JPMorganChase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). And contrary to Libertas's insinuation, Ottawa did not "abandon" or "waive" its argument that further discovery would be fruitless if the Court converts the motion into one for summary judgment. An argument's location in a footnote does not deprive it of the status of having been asserted.

The operative facts are not in dispute. The State issued public health orders requiring masking and social distancing in schools. Libertas failed to comply with those public health orders. The Ottawa Defendants issued orders requiring Libertas to comply or face temporary closure. Moreover, the testimony of Libertas's headmaster and the president of its board have supplied the Court with all the information necessary to rule as a matter of law whether Libertas's constitutional rights were violated. Further discovery would therefore be "fruitless." *See Helena Agri-Enters. LLC v. Great Lakes Grain LLC*, 988 F.3d 260, 273 (6th Cir. 2021); *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017); *Strehlke v. Grosse Pointe Pub. Sch. Sys.*, 654 Fed. App'x 713, 718–19 (6th

Cir. 2016); *Abercrombie & Fitch Stores Inc. v. Am. Eagle Outfitters Inc.*, 280 F.3d 619, 627–28 (6th Cir. 2002).

## II.   The Orders at Issue Are Neutral and Generally Applicable.

Relying primarily on *Roberts v. Neance*, 958 F.3d 409, 413–14 (6th Cir. 2020), Libertas argues that the Public Health Orders issued by Director Gordon—and the Ottawa Defendants' enforcement of the same—contain so many exceptions to the masking and social distancing requirements that the Orders are neither "generally applicable" nor "religiously neutral." (Libertas Brf., ECF No. 56, PageID.1504–1506). Libertas's argument was foreclosed by this Court's holding in *Resurrection Sch. v. Gordon*, 507 F. Supp. 3d 897 (W.D. Mich. 2020) (Maloney, J.).

In *Resurrection School*, the "Plaintiffs [sought] to enjoin Defendant Director of Michigan Department of Health and Human Services Robert Gordon from enforcing his December 7, 2020 Emergency Order as applied to them, effectively eliminating the face covering requirement for children attending kindergarten through fifth grade at religious schools." *Resurrection Sch.*, 507 F. Supp. 3d at 899. This Court determined the plaintiffs were unlikely to succeed on the merits of their Free Exercise claim.

First, this Court noted that a government order can be found to impermissibly discriminate against religion for one of three reasons:

> First, if it is motivated by animus towards people of faith in general or towards one faith in particular. Second, if it regulates only religious activity. Or third, it might appear to be generally applicable, but be so full of exceptions for comparable secular activities that in practice, it is not neutral or generally applicable.

*Id*. at 901. Noting that the order in question could only be unconstitutional under the third prong, this Court examined Defendant Gordon's face mask mandate to determine if it was full of exceptions. It concluded that it was not and held that the order at issue—which is nearly identical to the operative order in this case—was religiously neutral and generally applicable:

2

> Director Gordon's orders require all individuals over the age of five to wear a face mask in public. This requirement is in place whether they are attending a religious school, a secular school, running errands, or participating in some other facet of daily life. The exceptions listed in the order ***are very narrow and discrete***: individuals may remove their mask while voting, attending a public religious worship ceremony, eating, drinking, speaking to an audience more than six feet away, or receiving a service that requires removal of a mask. But ***these exceptions apply to public schools and private schools equally, and they apply to secular schools and religious schools equally***. The exceptions—some of which, like eating and drinking, cannot be accomplished while wearing a mask—***do not reveal any lack of neutrality***. The order is clear: individuals over the age of five *must* wear a mask when they are out in public. Therefore, given the near-universal mask requirement, the Court finds nothing in the contours of the order at issue that correlate to religion, and finds that ***the order cannot be plausibly read to contain even a hint of hostility towards religion***. The Court finds that the challenged face mask requirement is neutral and generally applicable. ***Any burden on Plaintiffs' religious practices is incidental, and therefore, the orders are not subject to strict scrutiny***.

*Id*. at 901–02 (quotations omitted) (emphasis added).

Likewise, the Orders at issue in this case—and the Ottawa Defendants' enforcement of the same—are not subject to strict scrutiny. Therefore, because the Ottawa Defendants' enforcement of the Orders is a religiously neutral, generally applicable government action that only incidentally burdens Libertas's asserted religious beliefs, the Ottawa Defendants are entitled to judgment as a matter of law under Fed. R. Civ. P. 12(b)(6) or 12(c). *Commonwealth v. Beshear*, 981 F.3d 505, 509 (6th Cir. 2020).

### III. Libertas's Vague Assertion of Its Religious Beliefs Cannot Serve as the Basis of a Free Exercise Claim.

Most Free Exercise cases involve unambiguous conflict between long-established and recognized religious beliefs and practices and laws attempting to govern a diverse, pluralistic society. *See, e.g., Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015) (Islamic requirement for men to wear beards vs. need for prison security); *Burwell v. Hobby Lobby Stores Inc.*, 573 U.S. 682, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) (traditional Evangelical Christian opposition to abortion versus contraceptive insurance coverage mandate); *Emp. Div. Dep't of*

3

*Human Res. of Or. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) (traditional Native American religious use of peyote vs. modern drug laws); *Wis. v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (Amish belief that education should terminate at 8th grade versus compulsory K–12 education). In each of these exemplars, not only was it clear what the exact religious practice or belief was impacted by the state action, the religious groups impacted had a long and demonstrated history of the belief or practice.

In contrast, Libertas's Complaint and its briefing contain somewhat vague allegations or allusions to its religious beliefs. For instance, Libertas states that it is "an openly faith-based institution that seeks to educate the whole person-integrated mind, body, heart, and spirit. Libertas desires its students to become well-educated [*sic*], lifelong learners with a commitment to walk with Christ." (Compl. ¶ 15). Libertas vaguely asserts that if Ottawa forced it to enforce masking and social distancing mandates, "Libertas, its parents, students, and faculty will suffer violations of their Constitutional rights to remain the primary educators of their children over matters of faith and reason." (*Id.* ¶ 45). Libertas states that it "partners with parents to employ a classical and biblical educational program, which is motivated to the fullest extent possible by the sincerely held Christian religious beliefs of Libertas, its parents, teachers, and students." (*Id.* ¶ 71). Libertas alleges that complying with the masking and social distancing mandates would "prevent Libertas, its teachers, its students, and their parents from fully engaging in religious and biblical education, practice, and worship and force its immediate closure." (*Id.* ¶ 82).

As discussed in detail in the Ottawa Defendants' principal brief, Libertas failed to adduce evidence at the three-day preliminary injunction hearing of a specific, sincerely held Christian religious belief—such as the Amish belief that children should not be educated past the eighth

4

grade—that forbids the wearing of a face mask and socially distancing to combat the spread of a communicable disease.

Now Libertas presents a theory absent from the allegations of its complaint: its sincerely held religious belief is that parents should have the final say in whether their children should comply with public health orders and Libertas must defer to their wishes. (Libertas Brf., PageID.1500–1504).

Such broad and vague statements of religious belief are untenable as a basis of a Free Exercise claim. Discussing anti-bigamy laws in the 19th century, the Supreme Court held:

> it is provided that plural marriages shall not be allowed. Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances.

*Reynolds v. United States*, 98 U.S. 145, 166–67, 25 L. Ed. 244 (1878).[1] While this Court is not to decide whether a plaintiff's religious beliefs are reasonable, mistaken, or insubstantial (*New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 586 (6th Cir. 2018)), this Court *is* required to determine if the conduct affected by the state action at issue is religiously motivated. *Id.* at 587.

Libertas claims its parents have expressed a preference that their children not be required to wear masks or socially distance, in contravention of the public health orders in place in October 2020. Libertas claims its sincerely held religious belief that it defer to parents' wishes will be violated if it requires masks and social distancing. But again, Libertas has failed to allege or prove

---

[1] Despite significant developments in First Amendment jurisprudence since 1878, this passage of *Reynolds* is still frequently cited. *See, e.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1128 (9th Cir. 2009); *Gellington v. Christian Methodist Episcopal Church Inc.*, 203 F.3d 1299, 1304 (11th Cir. 2000); *United States v. Acevedo-Delgado*, 167 F. Supp. 2d 477, 480 (D.P.R. 2001); *United States v. Masel*, 54 F. Supp. 2d 903, 922 (W.D. Wis. 1999); *Warner v. Boca Raton*, 64 F. Supp. 2d 1272, 1280 (S.D. Fla. 1999).

a *religious motivation on the part of the parents* for this refusal to comply with the public health orders.

Following Libertas's argument to its logical conclusion, a religious school would be exempted from any and all government regulation because the parents could vote to ignore the law—for any reason—and the school could then claim that enforcement of the law would violate its sincerely held religious belief that it defer to the parents. This would be the type of lawlessness warned against by the Supreme Court in *Reynolds* and in the biblical Book of Judges.[2]

Moreover, our Free Exercise jurisprudence typically involves a specific, historic, and discrete religious belief that is clearly and indisputably impacted by state action: e.g., requiring Evangelical Christian business owners to pay for medicine they consider to be abortifacient; requiring Muslim inmates to shave their beards; requiring Amish families to send their children to secondary school. Libertas has identified no authority where a court invalied state action on Free Exercise grounds simply because the challenged law was alleged to be contrary to vague and all-encompassing "sincerely held Christian religious beliefs." (Compl. ¶ 71). This Court should not accept Libertas's implicit invitation to impermissibly broaden the First Amendment.

### IV. Masking and Social Distancing Mandates Meet Strict Scrutiny.

Even if the Ottawa Defendants' masking and social distancing requirements did impact legally cognizable religious beliefs and were not generally applicable and religiously neutral, the mandate meets strict scrutiny. Libertas concedes that the Supreme Court has recognized that the government has a compelling interest in stemming the spread of COVID-19. (Libertas Brf., PageID.1506). And Libertas has failed to demonstrate that masking and social distancing is the least restrictive means of accomplishing that goal.

---

[2] "In those days there was no king in Israel. Everyone did what was right in his own eyes." Judges 21:25 (English Standard Version).

6

The least restrictive means test requires the government to show "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 574 U.S. at 364–65. And "if a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id*. at 365.

Unlike *Hobby Lobby*, where the government could achieve its goal of providing cost-free contraceptives by paying for them instead of compelling employers to do so, or *Holt*, where prison official could search Muslim inmates' beards for contraband instead of requiring them to shave, there is no less restrictive means for Ottawa to stem the spread of a contagious, airborne disease in a school than to require students and staff to wear facemasks.

How else could the government stem the spread of COVID-19? The government could force the school to close altogether or conduct classes virtually. It could require all eligible students and staff to be vaccinated to conduct in-person learning.[3] But these alternatives are *more* restrictive that requiring face masks. Thus, even if strict scrutiny applied, the Ottawa Defendants would be entitled to judgment as a matter of law under Rule 12(b)(6) or 12(c) on Libertas's Free Exercise claim.

## V.  Libertas Has Failed to State Claims for Violations of Its Rights to Freedom of Association or Family Integrity.

Libertas seems to be attempting a stealth amendment to its complaint, adding a claim for a violation of its Freedom of Assembly rights. (Libertas Brf., PageID.1503–1504). Such a stealth amendment is not permitted. *Tchankpa v. Ascena Retail Grp. Inc.*, 951 F.3d 805, 817 (6th Cir.

---

[3] Contrary to Libertas's argument, compulsory vaccinations do not violate the Free Exercise clause. "Constitutionally" a person has "no right to [a religious] exemption" to compulsory immunization. *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017). As the Sixth Circuit recognized, Michigan provided a *statutory* right to object to vaccination. *Id*. This is the same statute Libertas cites as the supposed source of a constitutional right to refuse a vaccination. But a state statute cannot create constitutional rights. *Id*.

7

2020) (holding that a plaintiff may not add new claims in response to a motion for summary judgment).

Libertas also continues to conflate its Freedom of Association and Family Integrity claims with its inchoate and meritless Free Exercise claim. (Libertas Brf., PageID.1503–1504). Libertas completely ignores the fact, as discussed at length in the Ottawa Defendants' principal brief, that Freedom of Association claims must be grounded in state action that forces an expressive association to accept members it does not want. *See, e.g., Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000). There is no allegation in the pleadings or the briefing that the Ottawa Defendants have interfered with Libertas's membership. And because Libertas's Free Exercise claim is without merit, the Ottawa Defendants can impose reasonable regulations—such as masking and social distancing during a pandemic—on parents' decisions regarding the conditions of their children's education, subject to rational-basis review. *Ohio Ass'n Indep. Schs. v. Goff*, 92 F.3d 419, 422–23 (6th Cir. 1996). The Ottawa Defendants are entitled to judgment as a matter of law under Rule 12(b)(6) or 12(c) on Libertas's Freedom of Association and Family Integrity claims.

## VI. Libertas's Procedural Due Process Argument Confuses the Alleged Violation of Its Rights with the Process Afforded.

Libertas argues its procedural due process rights were violated because it was "presented with a choice in the Cease and Desist Order—comply with restrictions it believed violated its First Amendment rights or face misdemeanor charges, citations, civil fines, suspension of licenses, or closure." (Libertas Brf., PageID.1509). Libertas also appears to argue that the anonymous complaints about the lack of masking and social distancing at Libertas were insufficient to give the Ottawa Defendants reasonable suspicion or probable cause to investigate. (*Id.*, PageID.1510).

8

As an initial matter, to the extent that Libertas is attempting to assert that its right to be free from unreasonable searches and seizures was violated under the Due Process Clause, such a claim is barred because it is ***only*** properly brought under the Fourth Amendment, not the Fourteenth. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (holding that when a particular amendment provides an explicit textual source of constitutional protection, it is that amendment, and not the Due Process Clause, that applies). Even so, Libertas has provided no authority for the proposition that Mansaray's phone calls with Libertas's headmaster Robert Davis—phone calls Davis voluntarily participating in and during which he admitted Libertas was neither masking nor social distancing—were custodial *Terry* stops. That is because no such authority exists.

Moreover, the logical end of Libertas's argument is that *every* constitutional violation results in a procedural due process deprivation. To illustrate, suppose the government enforces a law it reasonably believes to be constitutional, such as a noise ordinance with misdemeanor penalties. Someone affected by that enforcement believes the law violates her right to Free Speech. If she is cited for violating the noise ordinance, she obviously has had no opportunity to be heard regarding the constitutionality of the ordinance *prior* to the citation. But post-deprivation, she can either raise the First Amendment argument as a defense to a criminal prosecution *or* sue the government civilly.

Under Libertas's conception of procedural due process, she would also have a claim that her due process rights were violated because the government did not give her to opportunity to argue that the law was unconstitutional before it issued the criminal citation. In other words, after the police arrived on the scene, but before issuing the citation, the government would have to give her a formal or informal hearing to make her constitutional argument.

Libertas has presented no authority for the proposition that citizens have a right under the due process clause to formally challenge the constitutionality of every law and regulation on the books *prior to* the government enforcing that law against them. There is no such authority, because such a rule would lead to chaos and anarchy.

Libertas also ignores the "predeprivation" notice and opportunity to be heard that it enjoyed. Indeed, it is factually undisputed that it and its lawyers participated in phone conversations, emails, and letters from Mansaray, Stefanovsky, and Corporation Counsel. Moreover, it is undisputed that Stefanovsky only issued an order shutting down the School *after* this Court and the Sixth Circuit denied its preliminary injunction request. Libertas offers no law to suggest that this predeprivation opportunity to be heard was insufficient under any cases applying the Fourteenth Amendment context. The Ottawa Defendants are therefore entitled to judgment as a matter of law under Rule 12(b)(6) or 12(c) on Libertas's Due Process claim.

## **CONCLUSION**

Libertas's untenable position is that it can exempt itself from any law so long as a majority of its parents agree they do not want that law enforced. This Court should not countenance Libertas's invitation to expand the bounds of the First Amendment's protection beyond any recognizable limit. With Covid-19 infections continuing to climb among the unvaccinated and new variants that have the potential to "break through" vaccines—and with no vaccines available for those under 12—it remains as important than ever that local governments have access to unobtrusive, generally applicable tools to stem the spread. Because Libertas's claims fail as a matter of law, this Court should enter judgment in the Ottawa Defendants' favor.

                                              SILVER & VAN ESSEN, P.C.
                                              Attorneys for Ottawa County Defendants

Date: August 5, 2021                   By: /s/ *Douglas W. Van Essen*
                                                      Douglas W. Van Essen (P33169)

                                              BUSINESS ADDRESS AND TELEPHONE:
                                              300 Ottawa Avenue, NW, Suite 620
                                              Grand Rapids, MI 49503
                                              (616) 988-5600
                                              dwv@silvervanessen.com